[No. 20410. In Bank.—May 25, 1888.]

THE PEOPLE, RESPONDENT, *v.* GEORGE W. COX, APPELLANT.

CRIMINAL LAW — ORAL INSTRUCTION. — Although an oral charge in a criminal case, which is not taken down by the phonographic reporter, as required by section 1093 of the Penal Code, is ground for the reversal of a judgment of conviction, or of an order denying a new trial, if the character or effect of the oral instruction does not appear; yet, where the record shows that the language used, which was not taken down by the reporter, merely led up to an instruction which was properly taken down, and did not affect nor in any way qualify the charge which was taken down, it is not ground for reversal.

ID. — BILL OF EXCEPTIONS — NOTES OF REPORTER. — The notes of the shorthand reporter, and his transcription of them, are but *prima facie* evidence of the charge of the court; and the judge in settling the bill of exceptions should insert what he actually said to the jury, as a substitute for what the reporter erroneously stated was said. The settled and certified bill of exceptions imports absolute verity if the settlement is not attacked as provided by statute. If the judge should refuse to insert what was actually said, the remedy is to apply to the supreme court for leave to prove an exception which the judge below refused to settle according to the facts, as provided by section 1174 of the Penal Code. But such a refusal can never be assumed.

ID. — HOMICIDE — EXHIBITION OF WEAPONS. — The exhibition of a bowie-knife, pistol, and coat of mail, which are brought into court by the sheriff, and laid upon the table in sight of the jury by the district attorney, but not offered in evidence, upon the trial of a defendant accused of murder, is not a sufficient reason for reversing the judgment of conviction, if no objection is taken at the time to the action of the sheriff or district attorney, and the court is not requested to rule or charge with reference to the articles, but instructs the jury that they are to be governed alone by the evidence admitted.

ID. — MURDER IN FIRST DEGREE — EXPRESS MALICE. — To constitute mur-
der in the first degree, express malice is necessary. If the evidence
proves beyond a reasonable doubt that the killing was willful, deliberate,
and premeditated, express malice is proved. A charge that "when a
person deliberately, premeditatedly, and unlawfully kills another, he is
presumed to do so with express malice," is sufficiently favorable to the
defendant.

APPEAL from the judgment of the Superior Court of
Calaveras County, and from an order refusing a new trial.

*Ira Hill Reed,* for Appellant.

*Attorney-General Johnson,* for Respondent.

McKINSTRY, J.—The defendant was found guilty of
murder of the first degree.

It is contended the court below erred, in that the
judge gave to the jury an oral instruction, not taken
down by the phonographic reporter, as required by sec-
tion 1093 of the Penal Code.

The bill of exception shows that after the judge below
had read written instructions, and prior to an oral in-
struction (which was taken down), explanatory of the
difference between the degrees of murder, he addressed
to the jury a few words, "leading up to and in no way
touching upon" the oral instruction, which were not
taken down.

When, by the statute in force, it was required that the
charge of the court to the jury must be reduced to writ-
ing before its delivery, it was repeatedly decided that to
charge the jury orally was to commit an error. And
since the statute which provides for the charge being
taken down by the reporter, it has been said the giving
of an oral charge in the absence of the reporter—within
call—was error. (*People* v. *Hersey,* 53 Cal. 574.)

In the case at bar, the reporter was present and was
engaged in the task of taking down the charge while it
was being delivered. If the bill of exceptions showed
that an oral charge was given, not contained in the re-

port of the short-hand reporter, while it neither showed what the charge was nor the character or effect of it, the order denying a new trial would be reversed.

It must be presumed, however, that if the judge of the superior court had been requested to do so, he would have inserted the language used by him, which was not taken down by the reporter. If it appeared on appeal that such language could not have influenced the jury adversely to the defendant, the judgment would not have been reversed, either because the language was used or because it was not taken down by the reporter. Here the bill of exceptions does not contain the language of the judge (not phonographically reported), but the certified bill of exceptions shows that the language did not affect nor in any way qualify the charge which was taken down by the reporter.

The point of appellant is, that if any words were said by the judge to the jury which were not written down by the reporter, this is error demanding a reversal of the judgment.

It may be said it was intended the settlement of the bill of exceptions should not depend upon the fallible memory of the judge; but the alternative is, that there can be no contradiction or modification of the account of the short-hand reporter.

The notes of the reporter and his transcription of them in long-hand are but *prima facie* evidence of the charge. (Code Civ. Proc., sec. 273.) It is plain that in settling a bill of exceptions, the judge should insert what he actually said to the jury, as a substitute for what the reporter has erroneously stated was said to the jury. Shall it be held that if the reporter omits to take down a portion of the oral charge, the judge has no power in settling the bill to supply the portion omitted? So to hold would be to transfer the judicial function of charging the jury to the phonographic reporter.

The settled and certified bill of exceptions—the set-

tlement never having been attacked in the manner provided by statute—imports absolute verity. The words of the judge not taken down by the reporter were, therefore, unimportant, and could not have injured the defendant.

There is no pretense that the defendant sought to have included in the bill of exceptions the language actually used by the judge,—not taken down by the reporter,—or relied on the proposition that the language expressed an erroneous proposition as to the law, or that it was misleading. The defendant's counsel would have had the right to insist upon the insertion, and had the judge below refused the demand, the judge would have refused to settle an exception according to the facts, within the meaning of section 1174 of the Penal Code. But such a refusal can never be assumed. When the judge refuses, on request, to settle an exception according to the fact, the remedy of the party desiring the bill settled is to apply to this court for leave to prove the exception, under the section of the code last mentioned.

A recital in the bill of exceptions shows that, during the trial and in sight of the jury, a sheriff's officer brought into the court-room, and the district attorney placed upon the table, a bowie-knife, pistol, and coat of mail, which, as stated by counsel for appellant in this court, "had no bearing on the case." Whatever may have been the intention of the district attorney, the articles mentioned were not in fact offered in evidence. We are not called on to commend such an exhibition, but we find in it no sufficient reason for reversing the judgment. The attention of the court was not called to the presence of the articles, nor was the court requested to rule or charge with respect to them. No objection was made to the action of the sheriff or district attorney. The statement in the bill of exceptions as to the knife, pistol, and coat of mail has no appropriate place in the bill. A bill of exceptions must contain so much of the

evidence, or of facts occurring at the trial, only as is necessary to present the questions of law upon which the exceptions are taken. (Pen. Code, sec. 1175.) But we may safely say the jury was not influenced by the sight of the articles placed upon the table. They were very distinctly told that in finding their verdict they must be governed alone by the evidence admitted, and it must be presumed they were men of ordinary intelligence.

Appellant also contends "the instruction in chief, by which the jury may have understood that proof of the killing, without proof of express malice, was sufficient to establish the homicide to be murder in the first degree, was error."

We have found no such instruction in the record. Malice is express when there is manifested a deliberate intention to take away the life of a fellow-creature. (Pen. Code, sec. 188.) Murder which is perpetrated by any kind of willful, deliberate, and premeditated killing is murder of the first degree. (Pen. Code, sec. 189.) That is, the killing must be willful, deliberate, and premeditated; if the evidence manifestly proves beyond a doubt that the "killing" was premeditated, etc., the "express malice" is proved.

The court charged, "when a person deliberately, premeditatedly, and unlawfully kills another, he is presumed to do so with express malice." This was at least as favorable to the defendant as it should have been. The court also gave the statutory definition of murder, *totidem verbis*. And again, "the unlawful killing must be accompanied with a deliberate and manifest intent to take life in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon a pre-existing reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation."

Further, the court charged: "Any unlawful killing of

a human being, with malice aforethought, is murder; but if nothing further characterizes the offense, it is murder in the second degree,—to constitute the higher offense there must be willfulness, deliberation, premeditation. By willfulness is meant that it was of purpose, with the intent that by the given act the life of the party should be taken." And afterward, the court, speaking of murder of the first degree, said: "It is sufficient if a man conceives the intention to kill another one, and carries it into execution."

The general idea of the charge is, that if it is clearly proved the defendant killed the deceased, and the evidence does not show (it is unnecessary here to speak of the quantum of evidence necessary to show it) either that the killing·was justifiable or excusable, or that the offense was manslaughter, the crime is murder of the second degree,—unless the evidence manifests beyond reasonable doubt that the defendant deliberately and premeditatedly formed the intent to kill the deceased, and killed him to carry out that intent, in which case it is murder of the first degree. (*People* v. *Doyell*, 48 Cal. 96, 97.) We find nothing in it which could have induced the jury to believe that a homicide could be murder of the first degree, without express malice on the part of the slayer.

Judgment and order affirmed.

SEARLS, C. J., PATERSON, J., McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.