[No. 21123. In Bank.—January 5, 1895.]

## THE PEOPLE, Respondent, v. WILLIAM LEARY, Appellant.

Criminal Law—Misconduct of Jury—Reading Newspaper Reports.— Although the reading of newspapers by jurors while engaged in the trial of a cause is an act of inattention to duty which ought to be properly corrected, and if the newspaper contains any matter such as would, from its character or the manner or connection in which it is stated, be calculated to prejudice or injuriously affect the minds of a jury, a presumption of improper influence arises, requiring a new trial for misconduct of the jury, and in such case the jury would not be permitted to testify that they were not influenced by any thing read in the paper; yet this rule has no application where the newspaper merely states the evidence correctly as presented in the record, and contains nothing calculated to mislead or improperly affect the minds of the jury.

Id.—Use of Intoxicating Liquor.—The mere use of a small amount of intoxicating liquor in the jury-room, drank in little swallows just before going to meals, without any pretense that any member of the jury became in the least intoxicated or affected by the liquor so as to impair his faculties, or in the least interfere with the proper discharge of his duties, and the evidence shows the contrary, there is no such misconduct on the part of the jury in the use of intoxicating drink as to require the granting of a new trial.

ID.—SMUGGLING LIQUOR INTO JURY-ROOM.—The smuggling of liquor into the jury-room without the knowledge of the court is a reprehensible dereliction of duty on the part of a juror, if done willfully or wantonly, and, upon coming to the knowledge of the trial court, should be severely punished, and cause the verdict to be jealously scrutinized; but does not necessarily vitiate the verdict where the evidence is such as to rebut the presumption of injury flowing therefrom to the defendant.

ID.—MURDER—DEATH PENALTY—DISCRETION OF JURY—POWER OF COURT. The legislature having confided to the discretion of the jury the fixing of the penalty of death or confinement in the state prison for life, upon a verdict of guilty of murder in the first degree, the discretion of the jury in that matter is absolute, with no power reserved to the court to review their action.

ID.—INSTRUCTIONS TO JURY—ORAL CONVERSATION WITH COURT.—Where, after having received full written instructions, the jury returned into court, and, in the absence of the official reporter, orally asked the court whether, if the defendant was found guilty of murder in the first degree, the jury could fix the punishment of imprisonment for life, to which the court orally answered that they could, if that was their verdict, and, upon one of the jurymen orally asking whether the jury could bring in any one of the six verdicts given to the jury which they might agree upon, the court orally answered, yes—such oral conversation and instruction to the jury causes no prejudicial injury to the defendant, and is not ground for a new trial.

ID.—CONSTRUCTION OF CHARGE.—The charge to the jury is to be construed as a whole, and is sufficient where it covers the whole case fairly and correctly, and in a manner to leave no misapprehension in the minds of the jury.

APPEAL from a judgment of the Superior Court of Monterey County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. A. Kearney*, and *C. F. Lacey*, for Appellant.

· The jury was guilty of misconduct in reading newspaper accounts of the trial during its progress, for which misconduct the judgment should be reversed. (*Carter* v. *State*, 9 Lea, 440; *Walker* v. *State*, 37 Tex. 366; *State* v. *Lantz*, 23 Kan. 728; 33 Am. Rep. 215; *Farrer* v. *State*, · 2 Ohio St. 54; *Woods* v. *State*, 43 Miss. 364; *Mitchell* v. *Carter*, 2 N. Y. Sup. Ct. 448.)   The jury was guilty of gross misconduct in the use of intoxicating liquors, the proof of which is found in the record. (*People* v. *Lee Chuck*, 78 Cal. 317; *People* v. *Gray*, 61 Cal. 164; 44 Am.

Rep. 549.) The court erred in the giving of oral instructions to the jury. (*People* v. *Hersey*, 53 Cal. 574.)

*Attorney General W. H. H. Hart, Deputy Attorney General Charles H. Jackson, S. F. Geil,* and *John J. Wyatt,* for Respondent.

The mere fact that the jurors read the newspapers does not show that they were thereby disqualified to act as jurors, but it must be shown that the papers contained prejudicial reports of or comments on the case on trial. (12 Am. & Eng. Ency. of Law, 373; *State* v. *Anderson,* 4 Nev. 266; *People* v. *Gaffney,* 14 Abb. Pr. (N. S.) 36; *Flanegan* v. *State,* 64 Ga. 52; *Hunter* v. *State,* 43 Ga. 484; *State* v. *Cucuel,* 31 N. J. L. 249; *United States* v. *M'Kee,* 3 Cent. L. J. 285; *United States* v. *Reid,* 12 How. 361; *People* v. *Williams,* 24 Cal. 31; *State* v. *Brown,* 7 Or. 186; *Commonwealth* v. *Haines,* 15 Phil. 363; *People* v. *Goldenson,* 76 Cal. 328; *People* v. *Murray,* 85 Cal. 361.) If the presiding judge was satisfied no harm resulted from the reading of the articles the defendant cannot complain. (*Commonwealth* v. *Nash,* 135 Mass. 542; *Ferrill* v. *Simpson,* 8 Pick. 359.) The defendant must show positive injury. The presumption is the jury did its duty, and that the verdict is right. (Code Civ. Proc., sec. 1963, subds. 15, 33; *People* v. *Williams,* 24 Cal. 40; *People* v. *Lyle* (Cal., Oct. 31, 1884, not reported), 4 Pac. Rep. 979; Pen. Code, sec. 1404.) Communications with jury, if not influential or prejudicial, will not vitiate the verdict. (*People* v. *Boggs,* 20 Cal. 432; *March* v. *State,* 44 Tex. 64; *Dower* v. *Church,* 21 W. Va. 24; *Flanegan* v. *State,* 64 Ga. 53; *McKenzie* v. *State,* 26 Ark. 334; *Hager* v. *Hager,* 38 Barb. 92; *Ellis* v. *Ponton,* 32 Tex. 439.) Such a showing must be made as to enable the court to judge whether the conduct of the jury was detrimental to the interests of defendant. (Pen. Code, sec. 1404; *Medler* v. *State,* 26 Ind. 172; *Achey* v. *State,* 64 Ind. 64; *Newell* v. *Ayer,* 32 Me. 334; *State* v. *Stark,* 72 Mo. 40; *Wakefield* v. *State,* 41 Tex. 557; *People* v. *Williams,* 24 Cal. 31; *People* v. *Gaffney,* 14 Abb. Pr., N. S., 38; *People* v. *Lyle,* 4 Pac. Rep. 979.) The use of intoxicating liquors

will not vitiate the verdict, if they are used in moderation. (12 Am. & Eng. Ency. of Law, 372; *State* v. *Cucuel*, 31 N. J. L. 249; *Carter* v. *Ford Plate Glass Co.*, 85 Ind. 180; *People* v. *Deegan*, 88 Cal. 602; *State* v. *Livingston*, 64 Iowa, 560; *Wilson* v. *Abrahams*, 1 Hill, 207, is a leading case; *Stone* v. *State*, 4 Humph. 27; *United States* v. *Gilbert*, 2 Sum. 19; *Pratt* v. *State*, 56 Ind. 179; *Russell* v. *State*, 53 Miss. 368; *Roman* v. *State*, 41 Wis. 312; *Pittsburgh etc. Ry. Co.* v. *Porter*, 32 Ohio St. 328; *Westmoreland* v. *State*, 45 Ga. 225; *Wood* v. *State*, 34 Ark. 341; 36 Am. Rep. 13; *Tuttle* v. *State*, 6 Tex. App. 556; *State* v. *Tatlow*, 34 Kan. 80; *State* v. *Baber*, 74 Mo. 292; 41 Am. Rep. 314; *State* v. *Washburn*, 91 Mo. 571; *O'Neill* v. *Keokuk etc. Ry. Co.*, 45 Iowa, 546; *Jones* v. *People*, 6 Col. 452; 45 Am. Rep. 526; *Nichols* v. *Nichols*, 136 Mass. 256.) The language used in the oral instructions complained of by the appellant could not have influenced the jury adversely to the defendant, and was not therefore a prejudicial error. (*People* v. *Cox*, 76 Cal. 281.)

Van Fleet, J.—Defendant was convicted of murder in the first degree and sentenced to be hanged.

He appeals from the judgment and an order overruling his motion for a new trial.

Several grounds are urged for a reversal, which we shall notice in the order in which they are presented and discussed by appellant, though not in the logical sequence in which they arise on the record.

1. It is claimed that the jury were guilty of such misconduct as to entitle defendant to a new trial.

The first assignment under this head is that the jury read published accounts of the trial in a newspaper, to the prejudice of defendant's rights. It appeared on behalf of defendant on the motion that the *Salinas Daily Journal*, published at Salinas City, where the trial was had, printed from day to day a synopsis or *résumé* of the evidence in the case, and that on various occasions during the progress of the trial, but prior to their retiring for deliberation, copies of the paper fell into the hands

of the jury, and were read by some of them, including the matter therein relating to the trial; and that on one occasion one of the jurors made a suggestion that "they got that mighty straight," or some such remark—referring to an account of the trial in the paper.

In rebuttal of this showing the prosecution were permitted to put in the testimony of the members of the jury, to the effect that they were not influenced in any manner whatever, in considering the case or rendering their verdict, by any thing they read in the paper in question. This evidence was inadmissible for such purpose (*People* v. *Stokes*, 103 Cal. 193; 42 Am. St. Rep. 102); but in the view we take of the question this was immaterial.

It is not claimed by defendant that the matter published contained any thing of an essentially prejudicial character, or that the evidence or proceedings were in any manner garbled, unfair, or even incorrectly reported, or in any instance intended or necessarily calculated to improperly influence or prejudice the minds of the jury. To the contrary, counsel for defendant in his brief refers to the statements in the paper as "prepared by a person apparently fair and impartial," and frankly admits that he does not base his claim for a reversal upon the ground that the jury had imperfect or inaccurate reports of the trial; but his contention would seem to be substantially that the mere fact that the jury had been permitted to read matter in a newspaper referring to the trial, which might *possibly* in some manner injuriously affect their minds, immediately raises a presumption of improper influence, which affords grounds for a new trial. This, we think, is carrying the doctrine beyond a point where it can be sustained on reason or authority. Certainly counsel has referred us to no case going to such length. The rule upon the subject is correctly stated, we think, in *People* v. *McCoy*, 71 Cal. 397, one of the cases cited by defendant, where it is said: "The reading of newspapers by jurors while engaged in the trial of a cause is an act of inattention to duty which

ought to be promptly corrected, and if the newspaper contains any matter in connection with the subject matter of the trial *which would be at all likely to influence jurors in the performance of duty,* the act would constitute ground for a motion for a new trial."

If the matter, in other words, be such as would from its character, or the manner or connection in which it is stated, be calculated to prejudice or injuriously affect the minds of the jury, a presumption of improper influence arises, and a new trial will be granted, without requiring defendant to show that harm has in fact been done his cause. But the application of this rule does not help defendant. The several articles complained of are found in the transcript, and we have taken pains not only to examine them at length, but to carefully compare the statements of the evidence therein with the evidence in the case as presented in the record, and find nothing therein calculated to mislead or improperly affect the minds of the jury. The matter is exceptionally free from objectionable features, such as expressions of opinion or misleading statements. In fact, we may add that, if all newspaper reports of criminal proceedings were as fair, impartial, and circumspect as would seem to have been the desire here, there would be few instances in which verdicts would have to be set aside by reason of improper influence through the press.

A second ground urged under this head is that the jury were guilty of misconduct, in the use of intoxicating drink.

The jury were kept in charge of the sheriff during the trial and not permitted to separate, and, when not engaged in the trial or going to and from their meals, they were kept in a room by themselves, under the care of an officer, and not permitted to go about town. It appears that during the trial, which lasted some five or six days, and more particularly, as the evidence shows, in the early stages of the trial, including the time before the jury was entirely completed, several pocket-flasks of

whiskey were introduced into their room by members of the jury, without the knowledge of the court or parties, and some of the jurors would now and then take a drink — " on the sly," as expressed by one juror, and "surreptitiously," as put by another; although it does not appear from the showing that there was any studied effort upon the part of those who had the liquor to conceal the fact. There is some disparity in the statements as to the number of flasks that were had in the jury-room in all, the majority of the jurors putting the number they saw at different times at not more than two or three, while one put it as high as five or six. All who mentioned the character of the bottles, however, described them as half-pint pocket-flasks or bottles; and the strong preponderance of the showing, in fact the general consensus, was that there was little, if any, liquor drank in the room after the first day or two of the trial, and none after the jury retired for deliberation. One juror said he saw one bottle of "something red" in the room while the jury were deliberating, but this was shown by another juror to have been medicine prescribed for him by a doctor, and procured by permission of the court. The evidence is not such as to make the impression that there was any frequent or considerable drinking by any of the jurors at any time, and a number of them drank none at all. As one or two of the jurors expressed it, "the liquor was drank in little swallows just before going to meals." There is no pretense on the part of any one that any member of the jury became in the least intoxicated or affected by the liquor so as to impair his faculties, or in the least interfere with the proper discharge of his duties; in fact, the evidence shows clearly to the contrary.

Under these facts it is contended that there is disclosed such misconduct upon the part of the jury as to render a new trial necessary. But we cannot agree with this contention.

The cases of *People* v. *Gray*, 61 Cal. 164, 44 Am. Rep. 549, and *People* v. *Lee Chuck*, 78 Cal. 317, relied upon by

defendant, involved an essentially different state of facts from those presented here. In both of those cases the evidence tended to establish that the jurors had drank liquor, or were under its influence, after the jury had retired for deliberation upon their verdict.

In *People* v. *Gray, supra,* while the evidence disclosed that the jury had drank large quantities of malt and spirituous liquors during the antecedent stages of the trial the reversal is rested upon the ground that the evidence afforded " strong reason to suspect that one of the jurors drank so much while deliberating on the verdict as to unfit him for the proper discharge of his duty."

In *People* v. *Lee Chuck, supra,* Mr. Justice Works, who wrote the opinion, went further, and held, in effect, that, where it appeared that the jurors drank liquor while deliberating on their verdict, the question as to whether it had any effect on their minds was immaterial, as injury would be presumed and a new trial granted. This view of the law, however, was concurred in by but two other justices, the chief justice expressly dissenting from it, while concurring in the judgment; as the case was in Bank, it is doubtful if the opinion can be regarded as authority on this point. This is merely by the way, however, as neither of those cases supports the defendant's position—the essential element upon which they rest being lacking in the facts of this case.

Whatever may be the rule elsewhere it is now well settled in this state that the mere fact that a member or members of the jury have been guilty of using strong drink during the trial is not of itself sufficient ground for a new trial where the evidence is such as to rebut the presumption of injury flowing therefrom to the defendant.

In the case of *People* v. *Deegan,* 88 Cal. 602, it is held that the fact that a juror drank intoxicating liquors out of court, and that at the noon recess on the day the verdict was rendered he was for a time under its influence, does not vitiate the verdict if it appears that the juror, while sitting or deliberating as a juror, was sober, intel-

ligent, and in a fit condition to understand and deliberate upon the evidence and render a proper verdict.

In the case of *People* v. *Sansome*, 98 Cal. 239, where it appeared that after the submission of the case, when the jury were taken to dinner, two of their number drank whiskey, but not to an extent to intoxicate them, it is said: "It is argued that the admitted indulgence in intoxicating liquor by two of the jurors constituted misconduct on the part of the jury sufficient to reverse the judgment. We do not think this position can be maintained. If the two jurors who drank a little liquor were not affected by it, and, in view of the conflicting affidavits and the action of the court below, it must be assumed they were not, then it would seem that neither law nor sound reason would require the judgment to be reversed on this ground." (See, also, *People* v. *Williams*, 24 Cal. 31; *People* v. *Brannigan*, 21 Cal. 339; *People* v. *Dennis*, 39 Cal. 625; *People* v. *Symonds*, 22 Cal. 349; *People* v. *Bemmerly*, 98 Cal. 299.)

But it is contended by defendant that "smuggling" the liquor into the jury-room without the knowledge of the court or parties evinces such a total misconception by the jurors of the importance of their duties and obligations as of itself to cast grave suspicion on the verdict and warrant a new trial. The act of carrying liquor to the jury-room clandestinely is undoubtedly a very reprehensible dereliction of duty on the part of a juror, if done willfully or wantonly, and, upon coming to the knowledge of the trial court, should be severely punished and cause the verdict to be jealously scrutinized. But that it should necessarily vitiate the verdict we cannot concede. It might well happen that investigation in a given instance would disclose that the liquor had been procured innocently or under a supposed or actual necessity, with no intent to drink it for the mere love of it. It is a matter of common knowledge that many men require daily a certain quantity of alcoholic stimulant to maintain their physical if not mental equilibrium—some by reason of physical ailment, others be-

cause of long years of habit—and to be deprived of it is to be unfitted for their usual functions to perhaps as great a degree as another might through overindulgence. Such a man upon a jury might, if locked up for days, feel, without thought of impropriety, that it was necessary and justifiable for him to take a small quantity of liquor to his jury-room. Such an instance, in no way affecting the juror's capacity, should not necessarily set aside a verdict free from all other legal exception.

After all, the act, if wrongfully done, is but an act of misconduct differing only in degree from any other, and the pertinent question is whether it has resulted in injury to the defendant.

In this instance that question was involved in the ruling of the lower court denying the motion for new trial, and we cannot upon the facts say that it was wrong. If every relaxation from the strict line of duty on the part of jurors, irrespective of its effect upon their verdict, were to furnish ground for retrial, very few verdicts could be sustained, and the administration of criminal justice would be rendered difficult indeed.

2. It is next objected that "the verdict is against law and evidence." We do not understand counsel as attacking, under this head, the sufficiency of the evidence to justify the jury in finding the defendant guilty of murder, but the contention seems to be that the facts of the case were not such as to warrant the infliction of the death penalty. We confess to some cloudiness of apprehension of this point, and are at a loss to understand exactly upon what ground counsel expects us to review the action of the jury in this respect. The law submits to the jury, under the instruction of the court, the question as to the degree of murder, if any, of which the defendant is guilty in any instance, and section 190 of the Penal Code further provides that one found guilty of murder in the first degree " shall suffer death or confinement in the state prison for life, *at the discretion of the jury.*"

Whatever may have been the actuating consideration

in the minds of the legislature in enacting section 190, whether because they believed there are instances of murder falling within the definition of murder of the first degree, which, because characterized by a less degree of atrocity or other mitigating circumstance, call for a milder punishment than that of death, or whether their reason was something else, the fact remains that they have confided the power to affix the punishment within these two alternatives to the absolute discretion of the jury, with no power reserved to the court to review their action in that respect.

3. It is contended that the court committed error in giving the jury certain instructions orally which were neither reduced to writing nor taken down by the shorthand reporter.

The facts with reference to this point are recited in the bill of exceptions, from which it appears that after the jury had retired for deliberation they returned into court for further instruction. The defendant and his counsel and all the officers of the court, except the official reporter, were present when the following proceedings took place:

"The court said to the jury: 'Have you agreed on a verdict'? The foreman answered: 'We have not.' The foreman then handed to the court the form of verdict theretofore given to the jury to use if they found him guilty of murder in the first degree, and fixed his punishment at imprisonment for life, and said to the court: 'Can we bring in that verdict'?

"The court orally answered, without reducing the same to writing: 'Yes; if it is your verdict. If you agree to that, it can be returned.' Some juryman then asked: 'Can we bring in that verdict on the same evidence as the other one'?

"The court made no answer to that question, except by reading from the written instructions as follows: 'Should the verdict of the jury convict the defendant of murder in the first degree the law permits the jury to

award the penalty. This may be death or imprisonment for life in the state's prison.'

" Some other questions were asked by the jury relating to the grades of the offense, and the court said, orally, without reducing it to writing: 'I will read the instructions as to grades of the offense'; and thereupon read to the jury the written instructions theretofore read to them, defining the grade of the offense, but gave no oral instructions.

" One of the jurymen then asked this question: 'Can we bring any one of the six verdicts given us we agree on'?

" The court answered: 'Yes'; which answer was not reduced to writing.

"The court then asked the defendant if he had any suggestions to make or desired any thing further, and his counsel answered: ' No; nothing.'

" None of the questions asked by the jurors were reduced to writing.

" The jury then retired for further deliberation."

Conceding that this amounted to an oral instruction, we cannot perceive wherein the defendant could be in any wise injured by what took place. The language of the court has been preserved, and it appears that nothing whatever was said to the jury except what in substance, and more in detail, had been told them before in the charge of the court. They were instructed upon no new point, and what was said in no way qualified what had been theretofore given them. It was held in *People* v. *Cox*, 76 Cal. 281, that although it is error to charge a jury in a criminal case orally, yet, where the record shows that the language used, which was not taken by the reporter, merely led up to an instruction which was properly taken down, and did not affect nor in any way qualify the charge which was taken down, it is not ground for reversal. There is no distinction in principle between the effect of what was done in that case and what occurred here. If any more absolute rule was intended to be announced in *People* v. *Hersey*, 53

Cal. 574, it is to be taken as modified by what was held
in the Cox case.

In this connection we have carefully examined the
complaint made as to several instructions of the court,
and are unable to discover error in any of them.  The
criticism in appellant's closing brief as to the effect of
certain instructions is not justified.  The charge is to
be considered as a whole, and so regarded we do not
think it open to the construction put upon it.  The
charge seems to cover the whole case very fairly and
correctly, and in a manner to leave no misapprehension
in the minds of the jury arising from any particular or
isolated part.

4. A considerable number of other points are urged
in the able and ingenious brief of appellant, based upon
objections to the mode of securing the jury, alleged im-
proper conduct of the prosecuting attorney, and rulings
of the court on questions of evidence, and some others.
To discuss each one of these in detail would unneces-
sarily extend this opinion and serve no useful purpose.
Having in view the gravity of the case we have ex-
amined each point made with the most earnest and
zealous scrutiny, and we are unable after such exami-
nation to discover any error affecting the substantial
rights of the defendant or warranting a reversal of the
case.

The judgment and order are therefore affirmed.

McFARLAND, J., HARRISON, J., DE HAVEN, J., and
GAROUTTE, J., concurred.

BEATTY, C. J., dissenting.   I dissent. — As to the ir-
regularities and misconduct of the jury they were prob-
ably not sufficient to justify the superior court in
granting a new trial.  What drinking of intoxicating
liquors was done occurred during the various recesses
and adjournments of the court prior to the submission
of the cause.  It was slight in amount, and seems to
have produced no perceptible effect.  The worst feature

of it was the secrecy with which it was done, the efforts at concealment manifesting a consciousness on the part of the offending jurors that they were violating their duty. But since it does not appear that any juror was intoxicated or sensibly affected by what he had taken during the trial, or that there was any drinking after the cause had been submitted to the jury, the court was justified in holding that the defendant had not been prejudiced. The reading of the newspaper reports of the trial was a violation of the admonition which the judge is required to give to the jury at each recess or adjournment of the court, not only by the offending jurors but by the officer in charge. As to this, irregularity, however, as well as the other, it may be safely concluded that the defendant was not prejudiced because the reports so read consisted merely of a fair and truthful statement of the evidence given in court, and of the line of defense. It was, nevertheless, serious misconduct on the part of the jurors to disregard the admonition of the court, and it is no merit in them that what they read happened to be of a character which the court can hold to have been harmless. If, as well might have happened, it had been of a different character, their misconduct would have necessitated a new trial.

Neither do I think that the judgment or order appealed from should be reversed because of the oral instructions to the jury given by the court in the absence of the official reporter. But my views upon that point differ radically from those stated in the opinion of the court, and because I think the decision, as it stands, will lead to mischievous consequences, I feel bound to state the reasons for my dissent. It is, to my mind, clear from the record in this case, and that part of it copied into the opinion of the court, that the trial judge did orally instruct the jury in the absence of the official reporter. The jury came into court, and, by several questions, sought information for their guidance in finding a verdict. These questions were answered,

and the answers so given, taken in connection with the questions, were instructions. It is true these instructions, as set forth in the bill of exceptions, were correct and proper. But this does not cure the error. The error consists, and is complete, in giving the oral instructions in the absence of the official reporter. (*People* v. *Hersey*, 53 Cal. 575.) The object of the statute in requiring the instructions of the court, if not in writing, to be taken down by the reporter, is to insure defendant the means of getting a correct statement of the charge really given, and this object would be completely frustrated if the judge, who has orally charged the jury in the absence of the reporter, could cure the error by putting into the bill of exceptions a correct charge. The case of *People* v. *Cox*, 76 Cal. 281, does not overrule *People* v. *Hersey*, 53 Cal. 575. There the reporter was present, and engaged in taking down the charge while it was being delivered. And the bill of exceptions showed that he had taken down the whole charge, omitting only a few words " leading up to and in no way touching upon" the charge which was given.

The substance of the decision is that the court does not err in giving an oral charge when the reporter is present, and that, if the reporter fails to perform his duty to take it down fully and correctly, the judge may, nevertheless, put into the bill of exceptions what was actually said, and that the fault of the reporter will not be imputed as an error to the court. But there is a vast difference between the case in which the reporter is present, with the opportunity of performing his duty, and apparently engaged in its performance, and the case where he is absent, and necessarily unable to take down the charge.

In delivering an oral charge in the absence of the reporter, the court, by its own act, makes it impossible that the defendant shall be secured in his rights; and this is necessarily an error of the court. In the other case the reporter alone is at fault. In the Cox case it was merely held that such a fault on the part of the

reporter is not necessarily fatal; but it is not questioned that it would have been fatal if the court had committed the error disclosed in *People* v. *Hersey,* 53 Cal. 575.

If it be said that this is a distinction without a difference, that a defendant may be as greatly prejudiced by the incompetence or inattention of a reporter who is present as by the fallible recollection of a judge, I answer that, while such a thing is possible, it is not probable. In the vast majority of cases the court, with the aid of the reporter's notes, however imperfect, will be able to restate his oral charge correctly. Without any such notes it would rarely happen that it could be restated at the time of settling the bill of exceptions with substantial accuracy. The chance that a defendant may be prejudiced when the law is complied with is no reason for depriving him altogether of its protection. I cannot, therefore, concur in the views of the court upon this point. But, for a different reason, I do not think the defendant should be allowed to avail himself of this objection here. He was present with his counsel when the jury came into court for further instructions. He knew as well as the judge, and possibly better, that the reporter was not present, but he failed to call the fact to the attention of the court, or to make any objection, or take any exception at the time to what was said. If he had done so the court could have reduced its charge to writing, or could have sent for the reporter and had the questions and answers reported and by him taken down, together with an instruction to the jury to regard only what was said in presence of the reporter.

This course would have secured to the defendant all the rights which the statute was designed to secure him. Having failed to object then, I think he should not be heard to object now. I am not unaware that many of the former decisions of this court, made under the old statute before the adoption of the code, held that the giving of oral instructions, although unobjected to at the time, was fatal error on appeal; but I conceive that

these rulings were based upon the mandatory terms of the statute as quoted in *People* v. *Sanford,* 43 Cal. 35. Since the adoption of the codes I think the law as thereby amended (Pen. Code, sec. 1093) does not require so strict a construction, if it ever did. At all events, while I am willing to go to the extent of holding that a defendant cannot assign error upon the giving of an oral instruction in the absence of the reporter, unless it appears that he objected at the time and reserved his exception, I am not willing to say that such disregard of the statute by the court, when objected to, can be remedied by making it appear in the bill of exceptions that the charge so given was a very small matter and in fact correct; for this defeats the whole object of the statute.

There is a point, however, upon which I not only dissent from the reasoning of the court, but also from the conclusions and the judgment.

The defendant was tried upon a charge of murder, convicted of murder in the first degree, and sentenced to death.

In every charge of murder the distinction which the law makes between murder in the first degree and murder in the second degree is most clearly material, and an instruction to the jury to disregard evidence which ought to be considered in determining the degree of the crime is necessarily erroneous. And, if the instruction is to disregard evidence tending to prove the lesser degree, such an instruction is not only erroneous, but is also prejudicial to a defendant who has been found guilty of the higher degree.

In this case all the evidence went to show that the killing was done under the influence of anger caused by insulting language addressed by the deceased to the defendant in the presence and hearing of female members of his family. The provocation was not in law sufficient to mitigate the offense to manslaughter, and the time elapsing between the provocation given and the fatal blow was probably sufficient to have cooled the

passion of a reasonable man, for which reason also the crime was not mitigated to manslaughter. But when an unlawful killing is actually the result of that sudden and violent impulse of passion which is supposed to exclude deliberation, it cannot be murder of the first degree, notwithstanding the inadequacy of the provocation or the lapse of cooling time. These are merely grounds for implying the malice essential to the second degree of murder. While in murder of the first degree (except when perpetrated in the commission or attempt to commit arson, robbery, etc.) there must be that express malice which consists only in the deliberate purpose unlawfully to take away the life of a human being. For this reason it is everywhere held that the voluntary intoxication of the slayer may be considered by the jury for the purpose of determining whether, under the circumstances, the killing was deliberate and premeditated, and this notwithstanding such intoxication is not an excuse for any crime. Although not an excuse for the commission of a criminal act, the character of which is not dependent upon the state of mind of the perpetrator, it is admissible where such state of mind is an element of the offense for the reason that it has a tendency to disprove the necessary state of mind.

If this is true as to voluntary intoxication it must be true *a fortiori* as to partial insanity. A person may fall far short of that degree of insanity which exempts him from criminal responsibility, and may yet be in a condition mentally which a jury ought to consider in determining whether he has committed a homicide with express and deliberate malice.

This, in my opinion, is precisely such a case. There was much evidence as to the defendant's sanity, the result of which was to show that, while he was not insane to the extent of not knowing what he was doing or that his act was a crime, he was nevertheless to some extent mentally unsound as the result of long-continued abuse of intoxicating drinks, that he was easily excited

to violent anger, and in short that he was not in that respect a reasonable man.

In view of this evidence I think the giving of the following instruction was manifest error: "If the defendant was so far in the possession of his mental faculties as to be capable of knowing that the act of killing was wrong, any partial defect of understanding which might cause him more readily to give away to passion than a man ordinarily reasonable cannot be considered for any purpose."

And, the defendant having been convicted of murder in the first degree, the error is, as manifestly injurious.

For this reason I think the judgment and order should be reversed.

Rehearing denied.