[Crim. No. 2726.   Second Appellate District, Division Two.—August 6, 1935.]

THE PEOPLE, Respondent, v. RAMON RAUCHO et al., Appellants.

Ernest N. Clark, Vernon Cruickshank, J. Harvey Hearn, G. M. Grant and J. O. Hughes for Appellants.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and Jere J. Sullivan and Howard R. Hinshaw, Deputies District Attorney, for Respondent.

FRICKE, J., *pro tem.*—Defendants were convicted under two counts in an information charging robbery, one count charging an attempt to commit robbery, two counts of kidnaping for the purpose of robbery and eight counts of forcible rape.

The evidence under count one showed that on the evening of December 10, 1934, J. N. Carter, while walking on Euclid Avenue in Los Angeles, was attacked by three Mexicans, who struck him over the head with some object, knocking him down, took his hat, address book, glasses and about two dollars and then struck him some more. The three men then got into an automobile standing on a side street, in which a fourth man was waiting. Shortly thereafter some people in another car stopped and gave to Carter a card bearing an automobile license number which might be interpreted as being 2M1586 or 2M1506. The police officers to whom the card was next given interpreted the number as 2M1506, which was the number of the license on the automobile in which the four defendants were admittedly riding that evening before and after the incidents herein set forth. A radio police officer saw Carter at 10:29 P. M. on Euclid Avenue, which was very shortly after the robbery, and at 11:50 P. M. saw a man who later turned out to be the defendant Pena running down a hill in the district in which the Carter robbery occurred. It might be here mentioned that the defendants first met Mrs. Vogel, the victim involved in the rape charges, also on Euclid Avenue. As she identifies all of the defendants her testimony places them in the immediate vicinity of the Carter robbery shortly after its commission. Evidence given later in the trial showed that the incident of Pena running occurred after the conclusion of the incidents giving rise to the rape charges in which the four defendants were involved. The defendants admitted being together in the automobile during the evening, and some of the acts of sexual intercourse are admitted by them, with the qualification that they claim that these occurred with the consent of the prosecutrix. Defendants Ramirez, Raucho and Licon were arrested about midnight, riding in the automobile above mentioned, and they and Pena, who was arrested later, were identified by the prosecutrix, Mrs. Vogel, named in the rape charges. In searching defendant Licon the police found in his pocket the pair of glasses which had previously been taken from Carter by the men who robbed him. When asked whose glasses they were Licon at first stated that they belonged to him, but at the police station he said that they had obtained the glasses in the robbery of Carter.

This evidence was sufficient to sustain not only the conclusion that a robbery had been committed but also that the defendants were the perpetrators thereof.

The remaining counts involve a series of crimes connected in their commission. Shortly after 10:30 P. M., a matter of minutes after the Carter robbery, Ferdinand Modersitzki and Mrs. Leota Vogel left the home of some friends whom they were visiting and walked down Euclid Avenue to Seventh Street. As they turned east a car approached, proceeded to Euclid, turned and came back, stopping across the street from them. Defendants, identified by both the victims, got out, crossed the street, and one made the statements, "Stop, stick them up or we'll plug you. This is a holdup." One of the defendants had his hand in his pocket as if he had a gun in it. They searched Mr. Modersitzki, took his money and some other things, including a pocket knife, and ordered him into the front seat of the automobile. As to Mrs. Vogel, it appears that one of the defendants directed specially toward her the demand, "Give me your money," and when she responded that she had neither purse nor money he replied: "Don't scream or I'll plug you." Defendant Raucho had his arm around her waist, sticking a knife into her side, and defendant Licon had his hand in his pocket with the appearance of having a gun there. Mrs. Vogel, under this persuasion, was compelled to cross the street and was there pulled and lifted into the rumble seat of the automobile, between the two last-named defendants. The car, Ramirez driving, then proceeded to Dakota Street, where it stopped, and Pena took Modersitzki to the back of a lot, forced him to get over a fence and then lie face downward, ordering him not to move or he would club him. Pena then returned to the car, which then drove away. There is no occasion for detailing the events which then occurred. The evidence fully sustains the verdict of the jury that each of the defendants performed two acts of forcible rape upon the person of Mrs. Vogel, displaying and threatening her with knives, and that Raucho suggested that they cut her throat and kill her. As a final act in the series of bestial attacks Pena declared he would take the woman up on a hill and knock her in the head with a rock when he got through, got her out of the car and the others drove off. The threatened ultimate assault

was averted by the approaching headlights of an automobile manned by police officers, and Pena fled.

Appellants make no serious contention as to the sufficiency of the evidence to sustain their conviction under count II of the robbery of Modersitzki. The evidence is obviously sufficient.

It is claimed there is no evidence whatever of an attempt to rob Leota Vogel. The evidence clearly shows that the defendants approached Mrs. Vogel, displayed a knife and gave evidence of at least one of them being armed with a gun, declared that it was a holdup and demanded her money. The intent to rob is manifest from the circumstances. The fact that the victim had no money of which she could be robbed alone prevented the consummation of the obvious purpose of the defendants. A clearer case of an attempt to commit robbery could scarcely be found.

Appellants' principal attack predicated on insufficiency of the evidence is directed against the verdicts under counts IV and V of the information, which charge the defendants under section 209 of the Penal Code with kidnaping for the purpose of robbery. That section, so far as applicable to this point, reads: "Every person who seizes, . . . kidnaps or carries away any individual by any means whatever with intent to hold or detain, or who holds or detains such individual for ransom, reward or to commit extortion or robbery . . . is guilty of a felony." Appellants' argument is largely predicated upon the claim that to constitute a violation of the statute there must be both a seizing *and* a carrying away of the victim, whereas the statute plainly declares that either the seizing *or* the kidnaping or carrying away is a felony under its provisions, where the intent to commit robbery appears. The section was amended in 1933, in the light of the epidemic of kidnapings then prevalent, and the known *modus operandi* of kidnapers. By that amendment the word "seizes" was added to the section as one of the specific enumerated acts constituting the substantive crime punished by the section. This addition changed the offense theretofore described in section 209 from one which required the asportation of the victim to one in which the act of seizing for ransom, reward or to commit extortion or robbery became a felony. Obviously, Mr. Moder-

sitzki was seized with intent to commit a robbery. ■ An affirmance of a conviction under count IV does not, however, depend alone upon the ground just stated. It appears that the property taken from Mr. Modersitzki consisted of a pocket knife and about seventy-five cents in change. No loot was secured from Mrs. Vogel. The declared object of the defendants when they approached Modersitzki and Mrs. Vogel was robbery. Had they loaded their victims into the car without any search for property the facts would warrant the conclusion that the carrying away was for the purpose of robbery. The total failure to search Mrs. Vogel and the superficial search of Mr. Modersitzki and the attendant circumstances, defendants having declared no intent other than the intent to commit robbery, are not inconsistent with the theory that the carrying away was with the intention of a more complete search and, as instanced by a number of recorded cases, adding the clothing of the victims as a part of the loot. The fact that no further effort toward robbery was made after the automobile was driven away does not render this conclusion untenable. The jury may well have believed that the original intent to rob, which existed when the victims were first accosted, continued after they were placed in the automobile, but that in the bestial lust which subsequently arose in their degenerate hearts the thought of robbery was forgotten.

■ Again, it must be remembered that the perpetration of a robbery is not completed the moment the stolen property is in the possession of the robbers. Robbery, a combination of the crime of assault with that of larceny, includes, as does larceny, the element of asportation, and this taking away is a transaction which continues as the perpetrators depart from the place where the property was seized. Thus in *People* v. *Boss,* 210 Cal. 245 [290 Pac. 881], the defendants entered a store and, under the threat of displayed firearms, seized the money in the cash container and left the store. An employee of the establishment pursued them a short distance, when he was killed by a shot fired by one of the fugitives. The court there said: "Robbery unlike burglary is not confined to a fixed *locus,* but is frequently spread over considerable distance and varying periods of time. The escape of the robbers with the loot by means of arms necessarily is as im-

portant to the execution of the plan as gaining possession of the property. . . . The defense of felonious possession which is challenged immediately upon the forceful taking is a part of the plan of robbery, or as the books express it, it is *res gestae* of the crime.'' The court holds that the shooting of the pursuing employee was a murder ''committed in the perpetration'' of robbery, and hence a murder of the first degree. Even if we were to assume that the purpose of taking Mr. Modersitzki away in the automobile was to remove him from Euclid Avenue to a place where he could less easily raise an alarm and summon aid, such acts would, under *People* v. *Boss, supra,* and the cases there cited, have been committed in the perpetration of the crime of robbery. ■ Furthermore, the act of compelling Mr. Modersitzki and Mrs. Vogel to accompany the defendants from the place where they were first accosted to the automobile of itself constituted a kidnaping and carrying away. There is nothing in the law which requires that the victim of a kidnaping shall be transported a mile, a furlong or any particular distance; and it is only required that there be an actual asportation of the victim without regard to the extent or degree of such movement. (See *People* v. *Tanner,* 3 Cal. (2d) 279 [44 Pac. (2d) 324].)

■ What has just been said applies with equal force to count V, under which appellants were convicted of kidnaping Mrs. Vogel with intent to commit robbery. As to this offense we have also the further fact that no search was made of her person after the avowal of defendants that they were robbery bent and the demand for her money. The fact that the defendants may have had the intention of ravishing at the time they moved her across the street or when they compelled her to go away with them in the car, if such intent then existed, does not eliminate their expressed intent to rob her. The asportation of the victim for the double purpose of robbery and rape would of necessity support the conclusion that she was seized, kidnaped and carried away with intent to commit robbery.

■ Various assignments are made of misconduct of the district attorney. In view of the fact that the victim of the robbery charged in count I described his assailants as Mexicans, the fact that the defendants were Mexicans was clearly

competent and relevant and a proper subject of proof and comment in argument. ▮ Neither was there any misconduct in the asking of leading questions of the victims of the crimes as to whether the defendants had their hands in their pockets simulating the possession of guns. Evidence was received that the defendants appeared to have guns in their pockets. The possession of a dangerous or deadly weapon is a proper subject of proof upon a trial for robbery, and when established fixes the crime as of the first degree. Such proof is not limited to cases where the weapon is openly displayed, but includes evidence of facts, circumstances and conduct from which the jury may infer that the robber was thus armed. ▮ Furthermore, it appears from the record that the victims gave testimony without objection, prior to the alleged leading questions, of the defendants having their hands in their pockets as if they had guns. The objection that a question is leading is of no weight where the witness has previously, in response to a proper question, given the same testimony subsequently adduced by the leading question.

▮ Misconduct of the district attorney is assigned because he showed to a police officer on the witness stand a revolver which the officer identified as having found on the morning after the commission of the crimes behind the cardboard lining of the clothes closet of a room occupied by defendants Pena and Raucho. That portion of the testimony of the witness to the effect that the room was occupied by those defendants was stricken out as a conclusion of the witness. The court also sustained an objection to a question requesting the officer to relate a conversation between himself and such defendants concerning their place of residence with respect to where the gun was found. The failure of any appellant to assign the incident as misconduct is of itself sufficient to preclude the question being raised here for the first time. ▮ We are not, however, at all convinced that there was any misconduct. It appears from the portion of the officer's answer which was stricken that he had information that the room where the gun was found was the room of two of the defendants, and, while the conversation was excluded from evidence, that he had a conversation with these defendants concerning the place where the gun was found.

The record warrants the conclusion that the prosecutor had knowledge of these facts and of the further fact that between the time of the robbery and the arrest one of the defendants had returned to the place where the gun was found. It must also be remembered that in the perpetration of their crimes one or more of the defendants had their hands in their pockets in a manner indicating that they were holding guns. As it has been consistently held that the possession by a defendant of means such as were used to commit the crime charged renders the same admissible even though not identified in any way by an eyewitness to the offense (see *People* v. *Radovich,* 122 Cal. App. 176 [9 Pac. (2d) 542]; *People* v. *Nakamura,* 136 Cal. App. 582 [29 Pac. (2d) 320]), the prosecutor was fully justified in believing that the gun and the testimony concerning its discovery in the room of the two defendants were competent and material evidence. Neither a mere mistake by a prosecuting officer relative to the admissibility of proffered evidence (*People* v. *DeVries,* 69 Cal. App. 201 [230 Pac. 982]; *People* v. *Dingle,* 56 Cal. App. 445 [205 Pac. 705]) nor the displaying of an exhibit not thereafter introduced in evidence (*People* v. *Cox,* 76 Cal. 281 [18 Pac. 332]) is misconduct in the absence of a showing that the prosecutor was not acting in good faith.

Appellants also claim that the prosecutor was guilty of misconduct because of the introduction of evidence that when Mrs. Vogel returned from the hospital after treatment for the attack made upon her by the defendants she discovered upon her person some body lice, and that she never had anything of that kind prior to the attack. Not only was the evidence admissible as showing her condition after the attack, but it was received without objection, except to one question calling for the name given the unwelcome insects.

It is also claimed that the introduction of the card bearing the license number of the car used by defendants and handed to Mr. Carter by a passing motorist was misconduct. Here again, not only was there no objection to the admission of the evidence, but also the express consent of the defendants that the card be received in evidence, and no assignment or objection on the ground of misconduct was made to either of these incidents.

Appellants mention a statement in the district attorney's opening argument to the jury in which it is claimed

he referred to defense counsel as hirelings of the defendants, but they wholly fail to either print that portion of the argument in their brief or disclose the place in the transcript where the incident may be found, and we have been unable to find it in the record. We do find, however, that no objection was made to any portion of the prosecutor's argument in the trial court, which circumstance, together with the absence of any showing of prejudice eliminates the point as a possible ground of reversal.

Error is assigned in the admission of evidence that in addition to the acts of sexual intercourse forced upon the prosecutrix by defendant Pena the latter put his private parts in her face and made an obscene proposal. This evidence, forming as it did a part of the *res gestae*, was clearly admissible. Where evidence is otherwise admissible, the mere fact that it tends to show that the defendant had committed an offense not charged in the indictment, information or complaint does not affect its admissibility.

Error is assigned, without quotation or reference to the transcript, because the court sustained objections to certain questions put to Mrs. Vogel by defense counsel on cross-examination. It appears to be appellants' contention that had they been able to prove by this examination that Mrs. Vogel was not in fact the wife of Mr. Vogel they could have called the latter as a witness. As the competency of Mr. Vogel was in no degree affected by his marital status, the point is of no weight.

Appellants contend that the court erred in allowing the prosecutor to use certain written statements of the defendants in the presence of the jury. The statements were not introduced in evidence but were first used during the cross-examination of the defendant Raucho, who admitted making the statements, but declared from the witness stand that they were in part untrue and had been made under coercion. Appellants assert in their brief that the prosecutor read to the jury the statements in the confessions which Raucho admitted were true, over the objection of defendants. The transcript, however, discloses, and this appellants fail to mention in their brief, that the so-called objection consisted of the statement of counsel's contention that before the statement be introduced ''we should be per-

mitted to examine to see whether it were or were not a voluntary statement'', before it would be admissible, and expressly withdrew all objection as to those portions of the statement which the witness had conceded to be true. After reading those portions of the statement, and still during the cross-examination of the defendant Raucho, who had underlined in pencil those portions of the written statement which he claimed were not true, the prosecutor declared that he desired to read the underlined statements. Defense counsel then stated that he renewed his objection, and being asked to state the basis of the objection, declared that the statement was in the nature of a confession or admission which to be admissible must first be shown to have been free- and voluntary. The court ruled that it would sustain the objection until the necessary foundation was laid. The witness had previously indicated, as among the true statements, a declaration that he had not been promised any immunity or reward, and the signed statement itself contained the declaration that it was made freely and voluntarily. The statement itself was never introduced in evidence and is not before us. Though not printed in appellants' brief, we have read the cross-examination of defendant Raucho to which page references are made in the brief, and while the record is at times confusing, it contains nothing which would warrant a conclusion other than that the statements there presented amounted to admissions only and not confessions. As it is well settled that admissions are competent evidence, either as proof tending to establish the case of the prosecution or as impeachment of the declarant, whether made freely and voluntarily or not (*People* v. *Luzovich,* 127 Cal. App. 465 [16 Pac. (2d) 144] ; *People* v. *Shannon,* 203 Cal. 139 [263 Pac. 522] ; *People* v. *Johnson,* 203 Cal. 153 [263 Pac. 524] ), the authorities cited by appellants relating to the admissibility of confessions are not in point and the claim of error is without merit.

While it appears that the defendant Raucho was, subsequent to the occasion referred to in appellants' brief, recalled for further cross-examination; and while that brief suggests without reference to where the same may be found in the record that the other defendants were also questioned on cross-examination upon their extrajudicial statements, we again call attention to the fact that it is not incumbent upon an appellate court to examine portions of the record which

670

are neither printed in the briefs nor disclosed by reference to the page or place in the record where the same may be found. The burden of disclosing error is upon the appellant, and in the absence of such disclosure it must be assumed that, the claim being supported only by bald assertion, no such error exists. We have, however, read the remainder of the cross-examination of Raucho, and it there appears that some of the declarations in the last-mentioned portions of the written statement might be construed as a confession. The decision of the trial court permitting the use of the confession to impeach the defendant upon the witness stand was not erroneous. ▮▮▮ It should be noted that the trial judge fully and clearly instructed the jury that evidence of an extrajudicial statement of a defendant could be considered by the jury if they found that it was freely and voluntarily made, and then only for the sole purpose of impeaching the testimony of the defendant by whom such statement was made. It must be assumed that the jury followed this instruction and that if they concluded that the defendants made the statements introduced in evidence, such statements were considered by them solely as impeachment, and that they also concluded that such statements were free and voluntary, a conclusion which finds ample support in the evidence in spite of there being evidence to the contrary.

▮▮▮ Appellants' contention that a confession not shown to have been freely and voluntarily made is not only inadmissible as evidence tending to prove the crime confessed but also inadmissible to impeach the testimony of the defendant who made it, is sustained by authority (*People* v. *Bateman,* 80 Cal. App. 151 [251 Pac. 335]; see, also, *People* v. *Clifton,* 186 Cal. 143, 149 [198 Pac. 1065]) ; but that rule is not applicable where, as here, there is ample support in the record, taken as a whole, for the conclusion that the confession was free and voluntary.

▮▮▮ Error is assigned because of the refusal of the court of an instruction that before the jury could convict a defendant of rape they must find that there was an entire absence of consent on the part of the victim and resistance to the full extent of her power and until the consummation of the act. The instruction is not sufficiently complete to constitute a correct statement of the law applicable to this case. The

case of the prosecution disclosed that the acts were accomplished under threats of death and violent assault with a deadly weapon. To have given the instruction requested might well have caused the jury to believe that, in spite of the threatened bodily harm should she resist, no conviction could be had unless the prosecutrix resisted to the full extent of her power. Such is not the law. ▆▆ Furthermore, the court correctly instructed the jury as to the elements necessary to constitute the crime of rape and the law of rape as applicable to the case at bar. Having instructed the jury as to the law it was not incumbent upon the court to state it again in language preferred by the defense.

▆▆ There was no error in the denial of the motions of defendants for separate trials. The question was one within the discretion of the trial judge and there was no abuse of that discretion. (*People* v. *Bonner*, 5 Cal. App. (2d) 314 [43 Pac. (2d) 343]; *People* v. *Fontana*, 138 Cal. App. 379 [32 Pac. (2d) 160]; *People* v. *Tinnin*, 136 Cal. App. 301 [28 Pac. (2d) 951]; *People* v. *Goold*, 215 Cal. 763 [12 Pac. (2d) 958]; *People* v. *Erno*, 195 Cal. 272 [232 Pac. 710].)

The judgment and order denying the motions for a new trial are affirmed.

Crail, J., and Stephens, P., J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 6, 1935.