[Crim. No. 2996. In Bank.—January 13, 1928.]

THE PEOPLE, etc., Respondent, v. CLARENCE KELLY, Appellant.

Milton T. U'Ren for Appellant.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Matthew Brady, District Attorney, and Isadore Golden, Assistant District Attorney, for Respondent.

WASTE, C. J.—The appellant, Clarence Kelly, and Michael Papadaches were jointly charged by indictment with the commission of three murders, each alleged in a separate count. Both defendants entered pleas of not guilty. Their separate motions for a severance were granted, and the record now before us relates only to the trial and appeal of the defendant Kelly. His demurrer to the indictment was overruled, and his motion to compel the prosecution to elect as to which charge in the indictment it would submit to the jury was denied. After a lengthy trial, the jury returned three verdicts, one for each count of the indictment, each finding the defendant guilty of the crime of murder in the first degree, without recommendation. A motion for a new trial was made and denied, and the court pronounced judgment sentencing the defendant to pay the extreme penalty. He has appealed from the judgments of conviction and from the order denying his motion for a new trial. He rests his appeal upon the contention that he was deprived of certain constitutional and legal rights, greatly to his prejudice in the light of the evidence, and upon alleged prejudicial errors occurring during the trial.

According to the evidence, the appellant, Papadaches, and a boy known as "Spannie" spent the greater part of October 11, 1926, loafing and drinking in various places in San Francisco. In the early evening, the appellant, who was armed with a pistol, and Papadaches procured a Yellow taxicab driven by Walter Swanson, and were taken to Third and Sixteenth Streets, at which point they entered upon an almost unbelievable orgy of crime. They there compelled Swanson to get out of the cab, searched him, took away his cap and badges, and the appellant shot and killed him. The appellant then put on Swanson's

cap and badges, which he wore during the rest of the evening, got in the driver's compartment of the taxicab, and drove away from the scene of the shooting with Papadaches as an ostensible passenger. The killing of Swanson is charged in the first count of the indictment.

A few minutes after the shooting of Swanson the appellant, driving the taxicab, approached Mike Petrovich, who was walking along the sidewalk near the intersection of San Bruno Avenue and Mariposa Street. He asked Petrovich the time, and almost instantly shot and killed him, for no apparent reason other than a lust for killing, and with no apparent provocation. This offense is charged in the second count of the indictment.

Appellant and Papadaches then robbed a "soft-drink place" at the corner of Seventeenth and Mississippi Streets. A few minutes later they entered a restaurant at Seventh and Brannan Streets. While Papadaches "cleaned out the till," the appellant intimidated the patrons and others in the place with his pistol. Louis Ferrando appears to have said something about the affair being a "joke," and the appellant instantly shot him, inflicting a wound in his neck. The bandits then robbed a gasoline service station across the street from the restaurant, where the appellant shot and seriously wounded Carl W. Johnson, the proprietor, and Rex Hayden, and shot and killed John Duane. The murder of Duane is charged in the third count of the indictment.

The appellant and Papadaches then held up, beat, and robbed three other men at different points. While they were searching the last victim, an attendant at an oil station, a police officer drove his automobile into the place, and the bandits fled in the taxicab. In the pursuit which followed, during which a number of shots were fired by the pursuers, the appellant wrecked the taxicab. Papadaches and he separated, running in different directions. A week afterward the appellant was arrested at his home in San Francisco. The place was surrounded by police officers, and a search was made for Kelly. He was in hiding, and, when discovered, attempted to get away, but was shot and seriously wounded by the arresting officers. Papadaches, who became a witness for the prosecution, testified to all that occurred during the wild escapade in

which he and the appellant had engaged. His testimony was amply corroborated by other witnesses in remarkable detail. As a witness in his own behalf, the appellant admitted that Papadaches, "Spannie," and he were together, and drinking during the day, but insisted that his mind was a blank and he remembered nothing that happened on the evening and night in question. He does not make a direct attack on the sufficiency of the evidence to support the judgments of conviction, but contends that the evidence regarding the murder of Swanson and the murder of Petrovich was of such weak character that if he had been tried separately upon those charges he would have been entitled to an advisory verdict of acquittal as to each. He contends, also, that if the evidence of those murders and the evidence of the other crimes committed by him, which was permitted to be introduced because of the threefold charge in the indictment, had been eliminated, there would have been such reasonable doubt as to his having murdered Duane that a verdict of acquittal could reasonably have been looked for. Because of this situation, he contends that he suffered irreparable injury when the trial court overruled his demurrer to the indictment and denied his demands for separate trials upon the three charges of murder. Because of this situation, he also claims that by his being compelled to go to trial on the one indictment, charging the three separate offenses, he was deprived of his constitutional rights to a common-law trial. He rests the proposition on his assertion that at the common law there could be no joinder of charges of separate and distinct felonies in the same indictment, and no joint trial of separate and distinct felonies which did not relate to the same act.

It is well settled that the right of a trial by jury, guaranteed by the state constitution (art. I, sec. 7), is the right as it existed at common law, and any act of the legislature attempting to abridge that right is void. (*People v. Powell*, 87 Cal. 348, 355 [11 L. R. A. 75, 25 Pac. 481].) Appellant therefore argues that the provision of law (Pen. Code, sec. 954), under which the present indictment was filed, is unconstitutional in that it makes it possible for one, accused as he was, to be placed on trial at the same time, and with the same jury, on three separate and dis-

tinct charges of murder, committed at different times, at different places, upon different individuals, and requiring different evidence from different witnesses to establish each separate act. We know of nothing in the state or federal constitutions sustaining appellant's position, and we do not agree with his contention that two crimes of the same grade, or class, could not be joined in separate counts in one indictment at the common law. The authorities appear to hold the other way. The supreme court of the United States has announced the view that there is no impropriety in trying one accused of crime for different offenses at the same time, if the offenses are charged in the same indictment and are of the same grade, and subject to the same punishment, and says that "substantially to the same general effect are the decisions of other American courts" (citing cases), and that "the rule in England is not materially different." (*Pointer* v. *United States,* 151 U. S. 396, 401 [38 L. Ed. 208, 14 Sup. Ct. Rep. 410, see, also, Rose's U. S. Notes].) The court says (p. 403): "While recognizing as fundamental the principle that the court must not permit the defendant to be embarrassed in his defense by a multiplicity of charges embraced in one indictment and to be tried by one jury, and while conceding that regularly or usually an indictment should not include more than one felony, the authorities concur in holding that a joinder in one indictment, in separate counts, of different felonies, at least of the same class or grade, and subject to the same punishment, is not necessarily fatal to the indictment upon demurrer or upon motion to quash or on motion in arrest of judgment, and does not, in every case, by reason alone of such joinder, make it the duty of the court, upon motion of the accused, to compel the prosecutor to elect upon what one of the charges he will go to trial. The court is invested with such discretion as enables it to do justice between the government and the accused. If it be discovered at any time during a trial that the substantial rights of the accused may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, the court, according to the established principles of criminal law, can compel an election by the prosecutor."

Section 954 of the Penal Code, as in force when the crimes here considered were committed, expressly provided, as now, that an indictment may charge two or more different offenses connected together in their commission, or two or more different offenses of the same class of crimes or offenses, and the prosecution is not required to elect between the different offenses or counts so set forth. The defendant may be convicted of any number of the offenses charged, and each offense upon which he is convicted must be stated in the verdict. The court may, however, in the interest of justice and in its discretion, order that the different offenses or counts be tried separately. (Stats. 1915, p. 744.) These provisions appear to be in close harmony with the decision in *Pointer* v. *United States, supra,* and to preserve to accused persons the rights of the common law. The offenses in the present case were properly joined in one indictment, and the prosecution was not required to elect between them at the instance of the defendant. (*People* v. *Dasey,* 75 Cal. App. 439, 442 [242 Pac. 876].) The contention that the indictment is defective in that it contains no averment of the theory upon which the joinder of offenses is made falls with its making. The three counts set forth three offenses of the same class of crimes.

The trial court did not abuse its discretion in refusing to order separate trials on each of the counts. The indictment showed that the three murders were committed by the same person, on the same day, and in the same city and county. These facts alone justified the court in forbearing, at the inception of the trial, to compel an election by the prosecution. When the evidence was concluded, the wisdom of the court's ruling was manifest. (*Pointer* v. *United States, supra.*) The circumstances under which each crime was committed, and the proof required to establish it, necessarily threw light upon the other two. We are therefore of the opinion that no constitutional guaranties of the appellant were denied him.

It is next contended on behalf of the appellant that he was deprived of the number of peremptory challenges allowed him by law. During the course of the examination of the jury on *voir dire,* the defendant exercised and exhausted the twenty peremptory challenges allowed by section

1070 of the Penal Code. He then demanded that he be permitted to exercise the number of challenges to which he would have been entitled if he had been separately charged with three separate offenses of like nature and tried therefor at different times. The demand was properly denied. (*People* v. *Potigian*, 69 Cal. App. 257, 266 [231 Pac. 593]; 35 Cor. Jur., p. 414, par. 474; see, also, *People* v. *Howard*, 31 Cal. App. 358, 369 [160 Pac. 697].)

▉ No error was committed by the admission in evidence of all the crimes committed by the appellant and Papadaches on the evening and night of the murders. The proof of one tended to prove facts material to proof of the others. The evidence was, therefore, admissible, and the fact that it might have tended to prejudice the defendant in the minds of the jurors was no ground for its exclusion. (*People* v. *Nakis*, 184 Cal. 105, 114 [193 Pac. 92].)

Appellant complains that "the atmosphere created by the assistant district attorney trying the case was of such nature as to preclude a fair and impartial trial." He has specified a number of instances of alleged misconduct on the part of the prosecuting officer. Although he did not assign all of such occurrences as error at the time, we have closely scrutinized the record of all of them, and are satisfied that nothing took place which was of such nature as to prejudicially affect the case of the defendant, or to warrant a reversal of the judgment. Some of the specifications relate to trivial matters. Others to the exchange of comment, sometimes amounting to insinuations and direct charges, which were continually passing between counsel. The trial court, although frequently appealed to by counsel for the defense, did not always interfere or rule on the request, for the very sufficient reason that it was unnecessary. At other times he sustained the contention of the defense, and instructed the jury to disregard the incident and any inferences which might have arisen from it. In one of the instances most complained of, which occurred during the closing argument of the assistant district attorney, the court instructed the jurors that they were "to disabuse their minds of the idea" that the prosecution was improperly attempting to convey a wrong im-

pression to them concerning the crimes committed by the defendant.

Complaint is made that the trial court committed error in denying the challenge for cause, interposed by the defendant, to juror Smith, who, upon examination on *voir dire*, expressed himself as prejudiced against a defense based on a plea of insanity. On his answering further that, if chosen as a juror, he would set the prejudice aside, receive the evidence with a free and open mind, take the facts from the witnesses, and not from anything heard or read on the outside, give the plea of insanity, if presented, a fair and careful consideration, and follow the instruction of the court upon the subject, the challenge was denied. There was a conflict between different answers of the juror, which it was the function of the trial court to decide (*People* v. *Loper*, 159 Cal. 6, 11 [Ann. Cas. 1912B, 1193, 112 Pac. 720]), and from the record of the entire examination we are convinced that no error was committed.

Another contention of the appellant is that error was committed when the trial court did not allow the defendant to impeach the testimony of Dr. Strange, the autopsy surgeon, regarding the bullets taken from the bodies of Swanson and Petrovich. In order to show an alleged contradiction, the defense offered the testimony of the witness given at the coroner's inquest. A designated portion of the record was shown to the witness and read by him, but the court sustained the objection of the prosecution to the line of cross-examination. The testimony before the coroner was not admitted, but is brought here as an exhibit "for identification." The witness testified before the coroner that he performed autopsies upon the bodies of the three murdered men within a few hours after they were killed, and that the bullet taken from the body of Swanson was a steel-jacketed bullet weighing 93 grains, and that the bullet taken from the body of Petrovich was a lead bullet, not of the "steel-jacketed variety," weighing 68.5 grains. At the trial the witness testified exactly the same way, except that he could not say whether the bullet taken from the body of Petrovich was steel-jacketed, that he found it without a steel-jacket, and did not search for pieces of steel-jacket in Petrovich's body. The only apparent discrepancy in the testimony of the witness, given upon the

two occasions, is that at the inquest, and without any further pursuit of the subject, he said the bullet was "not the steel-jacketed variety," while at the trial he said, for the reasons stated, that he could not tell, after it had been fired, whether it was steel-jacketed when fired into the body of Petrovich; that he had found many bullets, and later found the steel jackets and fitted them on the bullets. The bullets were admitted in evidence at the request of the defendant, and we fail to perceive how any injury was done to his case.

The testimony of the police officers that, when the defendant was found at his home in San Francisco, a week after the murders were committed, he was in hiding and attempted to escape, was properly admitted for the purpose of showing a consciousness of guilt. (*People* v. *Fowler,* 178 Cal. 657, 673 [174 Pac. 892].)

While the appellant lay wounded at the city and county hospital he was visited by police officers who read to him an alleged confession made by Papadaches, who was present, and who was recognized by the appellant. When asked if he had heard what was read, the appellant answered: "Yes, sir," and said nothing more. Whether or not the circumstances were such as to permit the introduction of the statement and the evidence of what the defendant did when it was read to him was a question for the trial court to determine. We are satisfied that the statement and the evidence were properly admissible. (*People* v. *Byrne,* 160 Cal. 217, 235 [116 Pac. 521].)

The defendant Kelly having been accorded a legal, fair, and impartial trial, the judgments of conviction and the order denying the motion for a new trial are, and each is, affirmed.

Richards, J., Seawell, J., Shenk, J., Koford, J., *pro tem.,* Curtis, J., and Langdon, J., concurred.