[Crim. No. 1265.   Fourth Dist.   Sept. 25, 1959.]

THE PEOPLE, Respondent, v. CLEON COX, Appellant.

Morris B. Chain and Frederick E. Hoar for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

MUSSELL, J.—In an indictment filed in Kern County it was alleged that Cleon Cox on or about November 13, 1958, did wilfully, unlawfully, feloniously, and with malice aforethought murder Iler Molhook, a human being, in violation of section 187 of the Penal Code. A jury trial on this charge resulted in a verdict finding the defendant Cleon Cox guilty of the crime of murder and the degree was fixed as murder in the second degree. A motion for a new trial was denied and the defendant was sentenced to imprisonment in the state prison for the term prescribed by law. He appeals from the judgment and from the order denying a new trial.

Appellant does not contend that the evidence, if properly admitted, was insufficient to warrant the verdict rendered. A detailed statement of the testimony is therefore unnecessary, and a brief statement of the facts follows:

Appellant and the deceased, Iler Molhook, were each 27 years of age and had been friends for many years. They were both college graduates and were teaching at the Rosedale elementary school near Bakersfield. Peggy Cox, appellant's wife, was 21 years old and also taught at the Rosedale school. Appellant and his wife lived on Kentucky Street, in Bakersfield, and the deceased was a frequent visitor at their home. Some time in the late summer of 1958, mutual friends of appellant and deceased noticed that the deceased was unduly interested in appellant's wife. Appellant, when informed of

this situation, did not become very disturbed about it until September 21, 1958, when he returned to his home unexpectedly and found his wife and the deceased in an amorous embrace on the couch in the living room. Appellant ordered Molhook from the house. He left but returned a few minutes later, when appellant met him with a 30-30 rifle and ordered him to keep away from the house. Molhook then left. Appellant argued with his wife and slapped her, whereupon she left and took up temporary residence with a Mr. and Mrs. Raper. During the time Peggy was with the Rapers she was seen several times in the company of Molhook and several times she stayed away from the Raper residence all night. She left the Rapers in the latter part of September and went to live with her mother, Lenora Crippen, at Stockton. Both appellant and Molhook visited Peggy while she was at her mother's home in Stockton.

On or about November 3, 1958, appellant purchased a .38 Smith and Wesson revolver in Bakersfield and on November 12th he drove to Los Angeles to see Molhook and found him in Southgate, shortly after midnight. Appellant and Molhook then drove to appellant's home in Bakersfield.

Appellant testified that when he started out for Los Angeles he drove back to his house and picked up his gun, a .38 caliber revolver he had purchased a week before, together with a box of shells; that when he and Molhook got into the car in Southgate, he (appellant) pointed the gun at Molhook and told him he wanted to get the situation straightened out and that he meant business; that they discussed the matter of seeing Peggy and it was decided that they would go to Stockton and not tell her they were coming; that it was Molhook's idea that they stop off at appellant's home in Bakersfield and get some sleep; that he picked up the gun and put it in his pocket when they entered the house; that after some conversation about calling Peggy on the phone, he picked up the gun, which he had placed on a bookshelf and dialed Peggy's house direct; that Peggy's mother answered the phone and soon thereafter Peggy came on the line; that he asked Peggy if there was any chance to get back together and she stated she didn't think so and on being pressed for a more definite answer, said, "No"; that at about this time he heard a noise and looked up and Iler was jumping off the couch, kicking the coffee table away, and yelled at appellant to give him the phone; that when Molhook started toward him he (appellant) reached over and grabbed the gun as fast as he could and

pulled the trigger two or three times; that Molhook fell back on the couch, screamed and started coming around the coffee table toward appellant; that he (appellant) shot one more time; that Molhook stopped, staggered back and slumped to the floor, and that he (appellant) then called an ambulance.

When the ambulance and officers arrived a few minutes later they found the deceased lying on the floor and appellant kneeling over him. One of the officers picked up the .38 caliber revolver, which was lying on an end table near the sofa, and also picked up four empty cartridge cases.

When questioned by the officers, appellant stated that he had gone to Los Angeles looking for Molhook; that he more or less forced Molhook to come back to Bakersfield at gun point; that he and Molhook arrived back at Bakersfield at approximately 4:15 a. m. and that he had called his wife to find out if there was a chance of going back together.

Apparently, Molhook did not regain consciousness after the shooting. A post mortem examination showed that his death was due to the passage through his brain of a bullet removed from that area and fired from the revolver found near the body. Three bullets were removed from the body and there were bullet holes on the front of the right chest, in the brain, and on the lateral side of the left leg.

█ Appellant's first contention is that the trial court committed error prejudicial to the substantial rights of the defendant by admitting in evidence and permitting the witness Lenora Crippen to testify concerning a long distance telephone conversation had between defendant at Bakersfield and his wife, Peggy Cox, at Stockton, which conversation was surreptitiously intercepted and listened to by the witness. In this connection the witness Lenora Crippen testified that at approximately 4:30 a. m., on November 13. 1958, the telephone in her bedroom rang, she answered it, and recognized appellant's voice; that he asked if Peggy was there and stated that he would like to talk to her; that "I said, just a minute, I will call her. And so I got up and went in to Peggy and told her she was wanted on the phone, and she got up, and I motioned her to go into the dining room to answer, and she went in there, and I hurried back to the bedroom and climbed in bed and picked up the extension." Counsel for appellant objected to the admission of the telephone conversation overheard by Mrs. Crippen and after the objection was overruled, she testified in substance that after a few preliminary remarks appellant told Peggy that he wanted to ask her something,

that it was important to him, and he wanted her to think about it before she answered; that he then said, ''Is it all over between us?'' and Peggy replied, ''As far as I know it is.''; that appellant then said, ''That won't do, Peg, I want a definite yes or no'', to which Peggy replied, ''Well, it is still yes.'' That immediately thereafter she (Mrs. Crippen) overheard shots and a scream.

Appellant cites the case of *People* v. *Dement*, 48 Cal.2d 600, 605 [311 P.2d 505]. In that case it was contended that the testimony of the police officer who listened to a telephone conversation between the defendant and his wife was inadmissible. The court held that section 640 of the Penal Code and sections immediately preceding and following it are prohibitions against what is commonly known as ''wire tapping'' and the disclosing of information wrongfully obtained thereby, and that the federal courts have generally held that there is no interception within the meaning of section 605 [of 47 U.S.C.] when the intended receiver consents to or directs the overhearing of the communication at the moment it reaches him. In the instant case the evidence supports an inference that Peggy Cox consented to Mrs. Crippen's acts in listening in on the telephone conversation. Furthermore, the appellant, himself, testified as to the conversation substantially as related by Mrs. Crippen. There was no prejudicial error in admitting the questioned telephone conversation.

■ It is next claimed that the court erred in refusing appellant's offered instructions:

(1) On who was the aggressor and the evidence proper to be considered by the jury as shedding light upon the issue.

(2) For the purpose of indicating the state of mind of the deceased at the time of the fatal affray, defendant was entitled to show any previous difficulties between the parties and the evidence proper to be considered by the jury as shedding light upon that issue.

(3) Relating to the competency of evidence to show the relative strength of deceased and defendant and that evidence of great disparity of relative physical condition of deceased and defendant is always proper to be considered by the jury.

The several instructions given by the trial court as to the law of self-defense fully, fairly and correctly advised the jury as to the kind, quality and degree of proof required before the appellant could be convicted of the offense charged and it was not necessary that instructions on like matters be given in any particular phraseology. (*People* v. *Hill*, 76 Cal.

App.2d 330, 343-344 [173 P.2d 26].) No prejudicial error appears in this connection.

Appellant argues that the trial court committed prejudicial error by omitting to give on its own motion an instruction in the language of section 417 of the Penal Code. This argument is without merit. This section provides:

"Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

As is said in *People* v. *Soldavini*, 45 Cal.App.2d 460, 463 [114 P.2d 415], quoting from 8 California Jurisprudence, page 309:

" 'It is the duty of a court in criminal cases to give, of its own motion, instructions on the general principles of law pertinent to such cases, where they are not proposed or presented in writing by the parties themselves. But it is not its duty to give instructions upon specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them.' "

Moreover, the trial court's instructions fully cover the general principles of law pertinent to the instant case and it was no error to fail to instruct as to the provisions of Penal Code, section 417, under the circumstances presented by the evidence.

The next claim is that the bailiff in charge of the jury during its deliberations was guilty of prejudicial misconduct by his statements and comments made to and in the presence of the jury. In this connection appellant presented the affidavit of Evelyn Smith, one of the jurors, to the effect that on January 29, 1959, the jury had not reached a verdict as of 6 o'clock p. m. and were then taken to a hotel for dinner in the company of a matron and the bailiff; that during the dinner the bailiff said to one of the jurors: "In all my experience as a bailiff, I have never heard the law explained by any attorney as well as Mr. Nelson did." Mrs. Smith stated that after the jury returned from dinner the tide of individual opinion of the jurors began to swing rapidly to a second degree verdict. The other affidavit relied upon by appellant was that of one Dixie Burns, an alternate juror who was present at the dinner at the hotel, in which she stated that

the bailiff said: "In all my experience as a bailiff, I have never seen such a magnificent presentation of the law as given by Mr. Nelson, our district attorney." The mere fact that these affidavits show a remark made by a bailiff to a juror does not in and of itself amount to misconduct. As is said in *People* v. *Robinson,* 146 Cal.App.2d 310, 314 [303 P.2d 633]:

"Mere conversations between the jurors and officers of the court do not *per se* amount to misconduct. Such conduct, although often unfortunate, does not in every case militate to the determination that a mistrial must be declared. The mere showing of such a communication does not raise a presumption that the jury was improperly influenced. [Citations.]

The record also shows in this connection that the foregoing affidavits were presented to the trial court on a motion for a new trial and were considered by it. Under such circumstances clear abuse of discretion on the part of the trial court must be shown. (*People* v. *Hanks,* 35 Cal.App.2d 290, 301 [95 P.2d 478].) The trial court instructed the jury in this connection as follows:

"It becomes my duty as judge to instruct you concerning the law applicable to this case, and it is your duty as jurors to follow the law as I shall state it to you. . . .

"You are to be governed solely by the evidence introduced in this trial and the law as stated to you by me. . . ."

While the bailiff should not have made the remark attributable to him, no prejudicial error resulted from it.

Appellant further contends that it was error to permit the alternate juror, Dixie Burns, to sit with the other jurors while they were eating dinner and that this was tantamount to permitting an unauthorized person to be present during the deliberations of the jury. However, there is no showing in the instant case that the alternate juror was present during the deliberations of the jury. Section 1089 of the Penal Code provides in part that alternate jurors

". . . shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff during the trial of the cause, such alternate jurors shall also be kept in confinement with the other jurors; and upon final submission of the case to the jury such alternate jurors shall be kept in the custody of the sheriff and

shall not be discharged until the original jurors are discharged, . . .''

It does not appear from the record that any unauthorized person was present during the deliberations of the jury.

█ It is claimed that during the trial the district attorney was guilty of misconduct prejudicially affecting the substantial rights of the defendant. During the opening statement of counsel for appellant he stated that the evidence would show that the defendant went to Fresno State and obtained teaching credentials, and he stopped that in order to go into the United States Navy in 1949 or 1950. The district attorney then interrupted and said: ''I also hesitate to object and interrupt the opening statement of counsel, but even if the evidence shows all this it won't be relevant and I don't see how it will come into the case, in this particular shooting.'' The trial judge agreed with this comment and counsel for appellant then retracted his statement without objection on his part. Appellant was allowed at a later stage of the trial to testify as to his naval service and honorable discharge and since counsel for appellant failed to object to the statement made, he cannot do so now for the first time on appeal. (*People* v. *Lindsey,* 90 Cal.App.2d 558, 567 [203 P.2d 572].)

█ Appellant objects to the fact that the district attorney asked a witness who had testified that he had called one George Spears, if the subject of Cleon and Iler and ''this gun thing'' was discussed between the witness and Spears. An objection being made, the court commented that the question might be answered ''yes'' or ''no'' and instructed the district attorney to examine the witness on some other subject. The record shows that the witness never answered the district attorney's question and the matter was not again pursued.

█ Appellant states that the district attorney frankly admitted that it was his intention to have witnesses repeat their testimony if necessary. The record in this connection shows that the district attorney asked a witness to repeat the answer to a question asked. Counsel for appellant objected and the court instructed the district attorney not to repeat matters which were clear to the jury. It does not appear that the witness did in fact repeat his answer to the question asked.

█ Appellant contends that the district attorney was guilty of prejudicial error when he asked appellant's witness, Nancy Sprayberry, the following: ''You weren't present when Cleon told Dr. Einstein he didn't want to have children,

it bothered him in his hunting and that sort of thing?'' to which the witness replied, ''No, no.'' There was no objection made by counsel for appellant to this question and it cannot be made for the first time on appeal. (*People* v. *Lindsey, supra,* 90 Cal.App.2d 558, 567 [203 P.2d 572].)

Appellant contends that the district attorney erred in his closing argument to the jury when he said:

''. . . Why didn't I put the ambulance driver on and tell you how he saw the man? Do you know how many people we have interviewed? I can show you statements. I knew he had been talked to. There is at least twenty statements in my office that I haven't even looked at. I have to rely on my deputies and the investigators to tell me the things they found out which are relevant to the case. And is that relevant? We admit, and we continue to admit, he was unhappy; he was holding Iler on the floor after the shots had been fired.''

Here, again, counsel for appellant failed to make timely objection to the remarks and no prejudicial error was shown.

Appellant further claims that the trial court was guilty of misconduct in that he engaged in a reexamination of a second panel of jurors in the presence of prospective jurors from a first panel still under examination and in the jury box, and concerning conscientious scruples of any members of the second panel against infliction of the death penalty, and that the trial court, after both the prosecution and defense had stated their satisfaction with the jury as then constituted, reexamined the 12 jurors in the box. The record shows that after the prosecution and defense had indicated that the jury was acceptable, and before it was sworn, the court said:

''THE COURT: All right. Before we swear the jury, the court has a couple of matters here that is necessary to be asked of the jury. This is to each of you individually, of the twelve who are now in the box, and who have been passed by both sides.

''Does any juror now seated in the jury box have such a conscientious opinion against capital punishment as would either, first, prevent him or her from finding the defendant guilty because of the possible imposition of the death penalty; or, second, whether, even though you were willing to find the defendant guilty under proper evidence, you would decline under any or all circumstances to vote for the imposition of the death penalty? That is two questions.

''Is there any such person or persons now in the jury box

that would vote in that fashion? Did you understand the question? Was it clear as I read that? The court notes no dissent and notes no indication of misunderstanding.

"MR. CHAIN: If your Honor please, wasn't that question asked of those particular jurors before they were placed in the box?

"THE COURT: I think not quite, Mr. Chain. This is in two parts, and it may not be necessary to put it in two parts, but on some consideration we decided that the thing might be stated a little more at length than it was under the old cases. That is the purpose of reading that to the jury. No juror has indicated that he or she has such a conscientious opinion or otherwise disagree with the doctrine set forth in the question."

It does not appear that there was a "minute re-examination of the twelve persons in the box," as contended by appellant. The question of the imposition of the death penalty was important in the case. There was no improper emphasis placed upon it and counsel for appellant was accorded full opportunity to examine the jurors as to their scruples, if any, and otherwise. The jury was fully instructed on the degrees of murder, on manslaughter, and as to the law of self-defense. No prejudicial error appears in this connection.

Finally, appellant claims specific acts of misconduct on the part of the trial judge during the trial and in support of this claim appellant refers to and relies upon several affidavits filed on a motion for a new trial. These affidavits state generally that the trial judge smirked, grimaced or contorted his face in expressions of disdain during the summation and presentation of the defense by appellant's counsel and that the trial judge by his pained and bored expression indicated his disapproval of counsel for the defendant and his conduct during the trial. ■■■ While it is true that no counteraffidavits were filed on the motion for new trial denying the statements in the affidavits presented by appellant, the decision of the trial court in denying the motion for new trial, after considering the affidavits filed, is final in the absence of a showing of an abuse of discretion. (*People* v. *Henderson,* 79 Cal.App. 2d 94, 124 [179 P.2d 406].) ■■■ Moreover, objections to the actions of the trial judge alleged to constitute misconduct or impropriety must be made at the time the act or conduct was indulged in. The irregularity resulting therefrom will be deemed to have been waived if not then made. (48 Cal. Jur.2d, Trial, § 392.) In the instant case our attention has

not been directed to anything in the record indicating that such an objection was made. We find no abuse of discretion in the denial of the motion for new trial.

Judgment and order denying new trial affirmed.

Griffin, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 18, 1959.