[Crim. No. 1558. Fifth Dist. Dec. 27, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
FABIAN VALDEZ ADAME, SR., Defendant and Respondent.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Marjory Winston Parker, David K. Hicks, Arnold O. Overoye and Edmund D. McMurray, Deputy Attorneys General, for Plaintiff and Appellant.

Stanley P. Berg, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**FRANSON, J.**—Respondent was found guilty by a jury of second degree murder. He moved for a new trial on the ground of jury misconduct based on the fact that the alternate juror was present in the jury room for approximately one hour and forty minutes during the four and one-half hours of deliberation by the twelve regular jurors. The trial court concluded that under existing law such irregularity constituted prejudicial error and granted a new trial.

The facts are undisputed. The trial began on December 12, 1972. At 3:17 p.m. on December 14, the case was submitted to the jury for decision and the 12 jurors and the alternate, Mrs. Fischer, retired to the jury room. The 12 jurors sat at a table. Mrs. Fischer sat in a chair against the wall and did not participate in the deliberations.[1]

At approximately 4:55 p.m. the bailiff happened to mention to the trial judge and counsel that the alternate juror was in the jury room. Mrs. Fischer immediately was removed from the jury room and the court indicated to defense counsel that this was possible grounds for a mistrial. Counsel said he would wait and see how the verdict came out.

At 5:35 p.m., no verdict having been reached, the jury was excused until the next day. The following day, the jury continued its deliberations from 9 a.m. to 11:05 a.m. when it returned a verdict of second degree murder.

---

[1]After the case was finally submitted to the jury, and just before entering the jury room, Mrs. Fischer asked the bailiff whether she should retire with the jury. He replied that she should. Counsel and the trial judge were unaware at this time that the alternate juror had gone into the jury room.

Penal Code section 1089[2] provides in substance that upon final submission of the case to the jury the alternate jurors are to be kept in the custody of the sheriff or marshal until such time as the original jurors are discharged or until an alternate juror is substituted for good cause in the place of a regular juror. ■ Unless formally substituted, an alternate juror is prohibited from entering the jury room during the deliberation of the regular jurors. (*People* v. *Bruneman* (1935) 4 Cal.App.2d 75, 79 [40 P.2d 891].)

Appellant contends that the trial court erred in holding as a matter of law that the presence of the alternate jurior during the deliberations of the regular jury was prejudicial to respondent, thus compelling a new trial. Instead, it is argued that the presence of the alternate in the jury room constituted jury misconduct which raised only a presumption of prejudice and that this presumption was rebutted by the uncontradicted evidence that the alternate juror did not participate in the deliberations of the jury.

Appellant further contends that in the event it was prejudicial error to have the alternate in the jury room, such error was waived by defense counsel's failure to move for a mistrial when first advised of the error.

## Discussion

■ It is true that the general rule is that jury misconduct raises a presumption of prejudice which may be rebutted by proof that the misconduct did not in fact work to the defendant's detriment. Penal Code section 1181, subdivision 3, provides that a new trial may be granted when the jury has ". . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented." Accordingly, various irregularities involving jurors have been held to constitute harmless error. (*In re Winchester* (1960) 53 Cal.2d 528, 534-535 [2 Cal.Rptr. 296, 348 P.2d 904] [bailiff permitted three jurors to make telephone calls]; *People* v. *Cord* (1910) 157 Cal. 562, 571 [108 P. 511] [jury became separated when a fire broke out in the restaurant where they were having lunch]; *People* v. *Leary* (1895) 105 Cal. 486, 491-494 [39 P. 24] [several members of the jury drank from pocket flasks of whiskey during deliberations]; *People* v.

---

[2]Penal Code section 1089, in relevant part, provides: ". . . upon final submission of the case to the jury such alternate jurors shall be kept in the custody of the sheriff or marshal and shall not be discharged until the original jurors are discharged. . . . If at any time . . . a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall *then* take his place in the jury box. . . ." (Italics added.)

*Brannigan* (1863) 21 Cal. 337, 341 [outsider told a juror to convict defendant]; *People* v. *Piazza* (1927) 84 Cal.App. 58, 90 [257 P. 592] [jury foreman talked to deputy sheriff]; *People* v. *Weston* (1917) 32 Cal.App. 571 [163 P. 691] [doctor who was also the principal witness for the prosecution went into the jury room to treat a juror who became ill during the deliberations].) (See also Note, *Alternate Jurors: Substitution After Submission of Case: Presence During Deliberations of Jury* (1935-36) 24 Cal.L.Rev. 735, 738-739.)

Two case have held that the presence of alternate jurors with the regular jurors after final submission of the case but *before* commencement of deliberations did not justify the granting of a new trial. (*People* v. *French* (1939) 12 Cal.2d 720, 770-771 [87.P.2d 1014], overruled on other grounds in *People* v. *Valentine* (1946) 28 Cal.2d 121, 144 [169 P.2d 1]; *People* v. *Cox* (1959) 174 Cal.App.2d 30, 38-39 [344 P.2d 399].)

■ However, contrary to the argument of the Attorney General we are not faced with the usual form of juror misconduct discussed in these cases, but rather with an irregularity which has been held to substantially invade the very sanctity of the deliberative process. In *People* v. *Britton* (1935) 4 Cal.2d 622 [52 P.2d 217, 102 A.L.R. 1065], our Supreme Court held that it was reversible per se to permit an alternate juror to retire to the jury room with the regular jury during deliberations even though the trial court instructed the alternate juror that she should not express any opinion or participate by word or action in the deliberations. (Two justices dissented, contending that no possible prejudice was sustained by the defendant by reason of the presence of the alternate in the jury room.) The majority expressly approved the conclusions reached in *People* v. *Bruneman, supra,* 4 Cal.App.2d 75, where it was held that the presence of alternate jurors in the jury room constituted an invasion of the defendant's right to trial by jury as guaranteed by article I, section 7 of the state Constitution.

In *Bruneman,* pursuant to stipulation of counsel, the trial court ordered 2 alternate jurors to accompany the 12 regular jurors to the jury room and instructed them that they should listen to the discussion of the other jurors but that they were not to talk or address the regular jurors on any subject. The *Bruneman* court noted that the right of trial by jury as guaranteed by the state Constitution is the right as it existed at common law, which is a jury composed of 12 persons (*People* v. *Kelly* (1928) 203 Cal. 128, 133 [263 P. 226]; *People* v. *Powell* (1891) 87 Cal. 348, 355 [25 P. 481]), and stated that the procedure followed by the trial court in effect resulted in a trial by 14 jurors.[3]

---

[3]A defendant may waive a trial by jury (art. I, § 7, Cal. Const.) and may agree to be tried by a number of jurors less than 12. (*People* v. *Patterson* (1959) 169 Cal.

In holding that the mere presence of the alternate jurors in the jury room was a substantial invasion of the defendant's constitutional right to a jury trial, the *Bruneman* court relied on several cases from other jurisdictions involving the presence of a stranger or court officer in the jury room. It first quoted from *Goby* v. *Wetherill,* 2 K.B. Div. 674, where it was said: " 'The principal is that the jury are entitled, and bound, to deliberate in private. If a stranger, whether an officer of the court, or not, is present for a substantial time during their deliberations, then the verdict is vitiated.' " The court then quoted from *People* v. *Knapp* (1879) 42 Mich. 267 [3 N.W. 927, 929] where it is stated: " 'It is not claimed that the officer can with propriety be allowed to be within hearing when the jury are deliberating. Whether he does or does not converse with them, his presence to some extent must operate as a restraint upon their proper freedom of action and expression. When the jury retire from the presence of the court, it is in order that they may have opportunity for private and confidential discussion. . . . *The presence of a single other person in the room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out.*' " (Italics added.) 4 Cal. App.2d at pp. 80-81.)

Finally, *Bruneman* cited *State* v. *Wroth* (1896) 15 Wash. 621 [47 P. 106]. There the judge went to the jury room in response to a request from the jury and received from them some communication. In response to the argument that the judge said nothing to the jury and, hence, his conduct could not have prejudiced the defendant, it was held that a defendant is not required to depend upon the memory or sense of fairness of the judge as to what occurred between the judge and jury at any time or place when he has no lawful right to be present. "[The defendant's] right in this respect goes to the very substance of trial by jury."[4]

The *Bruneman* court then stated at page 81: "We think that these observations apply in their full force to the presence in the jury room of an 'alternate juror' at a time when the case has not been submitted for *his* verdict.

"We conclude, therefore, that the presence in the jury room of the 'alternate jurors,' to whom the case had not been submitted for decision,

---

App.2d 179, 186-187 [337 P.2d 163].) There is no authority for deliberation by a jury of more than 12 jurors.

[4]As the *Bruneman* opinion suggests, a defendant should not be forced to rely on the memory of an alternate juror as to what transpired in the jury room. This problem is particularly apparent in the instant case where, at the hearing on the motion for new trial, Mrs. Fischer testified, "I think I was in there around five to ten minutes until the bailiff came and got me out. It might have been a little longer than that." In fact, she was in the jury room for approximately one hour and forty minutes.

was an invasion of the defendant's right of trial by jury. And from the same premises we further conclude that this was an error so far destructive to the invaded right, that the error could not by mere consent be rendered harmless."

Appellant seeks to distinguish *Bruneman* and *Britton* on the basis that those cases involved the presence of the alternate in the jury room during the entire period of deliberation and the reaching of a verdict, whereas in the instant case Mrs. Fischer was present in the jury room for only an hour and forty minutes of a total of four and one-half hours of deliberation. The Attorney General says, "The focus should be on the business the jury is about, *not the sanctity of the jury room.*" (Italics added.) This argument suggests that early deliberations of the jury are of less significance to the verdict than later deliberations.

Not only is appellant's position untenable insofar as suggesting that the jury's early deliberations are disrelated to its ultimate decision, but it is directly contrary to the *ratio decidendi* of *Bruneman* and *Britton*. These cases in substance declare that it is the very sanctity of the jury room with only the regular jurors present which is protected by article I, section 7 of the state Constitution. We see no escape from this conclusion even if we were inclined to rule otherwise were this a case of first impression.[5]

---

[5]Even if we should hold that the presence of the alternate in the jury room during deliberations raised only a presumption of prejudice, under the rules of evidence it would be difficult to rebut the presumption. Evidence Code section 1150 provides that upon inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring within the jury room, of such character as is likely to have improperly influenced the verdict; however, no evidence is admissible to show the *effect* of such statement, conduct, condition or event upon a juror in influencing him to assent or dissent from the verdict or concerning the mental processes by which it was determined (Evid. Code, § 1150).

In *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349 [78 Cal.Rptr. 196, 455 P.2d 132], it is held that the proper distinction as to admissible evidence to test a verdict under Evidence Code section 1150 is between "proof of overt acts, objectively ascertainable," and "proof of the subjective reasoning processes of the individual juror. . . ." Because the latter can be neither corroborated nor disproved, they are excluded. But improper influences can be proved when they are "open to sight, hearing, and the other senses and thus subject to corroboration." (See also Witkin, Cal. Criminal Procedure (1973 Supp.) § 554A, pp. 479-481.)

Applying these rules to the instant case, the objective admissible facts are that the alternate was in the jury room and did not participate in the deliberations. The subjective *inadmissible* fact is whether her presence did or did not influence the thought process of the regular jurors. Thus, the key question which must be answered under Penal Code section 1181, subdivision .3—did the presence of the alternate prevent a fair and due consideration of the case—cannot be answered. We cannot

California is not alone in holding that the unauthorized presence of an alternate during jury deliberations is reversible error. In *United States* v. *Beasley* (10th Cir. 1972) 464 F.2d 468, the alternate juror went to the jury room with the regular jurors, voted to select a foreman and then voted to go to lunch. The alternate was with the jury about 20 minutes before the court removed her. A motion was made for a mistrial and a hearing was held to determine the extent the alternate had participated in the deliberations. The trial court found no prejudice and denied the motion. On appeal, the conviction was reversed with directions to grant a mistrial, and the reviewing court stated: "The inquiry at a hearing under a standard which requires a showing of prejudice is itself a dangerous intrusion into the proceedings of the jury. The jury when organized is acting as a separate entity. *The purpose sought to be achieved at such a hearing is not of sufficient importance to warrant such an inquiry in comparison to the possible harm or appearance of interference."* (Italics added.) 464 F.2d at p. 470. (See also *United States* v. *Virginia Erection Corporation* (4th Cir. 1964) 335 F.2d 868.

And in *Commonwealth* v. *Krick* (1949) 164 Pa. Super. 516 [67 A.2d 746], it was held that permitting two alternate jurors to retire to the jury room after submission of the case to the jury even though they were withdrawn 10 minutes later, was reversible error. (See also *People* v. *King* (1961) 13 App.Div.2d 264 [216 N.Y.S.2d 638]; 84 A.L.R.2d 1288, 1312-1315.)

Appellant next contends that respondent waived his right to move for a new trial when he failed to move for a mistrial immediately after he became aware of the fact that the alternate juror had been in the jury room. Appellant relies on *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98 [95 Cal.Rptr. 516, 485 P.2d 1132] for the proposition that a litigant seeking a new trial on the ground of juror improprieties must present affidavits showing that neither he nor his attorney had knowledge of the misbehavior until after the verdict was returned.

The purpose of the "no knowledge" rule is to prevent a party who personally or through counsel has discovered some juror misconduct during the course of the proceedings from gambling on the outcome of the jury's deliberations while secretly preserving the error to be raised on a motion for new trial in the event of an unfavorable verdict. It is well established that if at any time during trial a party or his counsel becomes aware of

say as a matter of law that the presence of the alternate did *not* influence the other jurors because in fact it may have; hence, any presumption of prejudice would be conclusive, rather than rebuttable.

facts constituting misconduct or irregularity in the proceedings of the jury he must promptly bring such matters to the attention of the court, if he desires to make an objection or he will be deemed to have waived the point as a ground for a new trial. (*Weathers* v. *Kaiser Foundation Hospitals, supra,* at p. 103.)

However, in the instant case there was no secret preservation of error by counsel since both the court and counsel learned of the presence of the alternate juror in the jury room at the same time. For this reason the "no knowledge" rule is inapplicable.

There are two additional reasons why appellant's waiver argument fails: First, in *Bruneman, supra,* the court held that even where defense counsel agreed in advance to allow alternate jurors to accompany the regular jurors to the jury room, their presence was reversible error. If a stipulation to the presence of an alternate in the jury room is not a waiver, then a failure to object and to move for a mistrial upon discovery of the irregularity cannot be deemed a waiver. Second, the record indicates that counsel was physically ill and in great pain at the time he learned of the presence of the alternate juror in the jury room.[6] ▮ It clearly would be violative of the defendant's right to effective representation by counsel to hold that he was bound by a decision of his attorney made while his attorney was ill. (See generally *People* v. *Najera* (1972) 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1352]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

The judgment granting respondent's motion for a new trial is affirmed.

Gargano, J., concurred.

**BROWN (G. A.), P. J.**—I concur with the result herein solely under the compulsion of the decision of the Supreme Court in *People* v. *Britton* (1935) 4 Cal.2d 622 [52 P.2d 217, 102 A.L.R. 1065], by which we are bound. (*Weil* v. *Weil* (1951) 37 Cal.2d 770, 776 [236 P.2d 159].)

---

[6]"MR. CARVER [defense counsel]: As pointed out, I don't think I could waive it, Your Honor, with a constitutional right involved. This is what is bothering me. Let's make the record complete, Your Honor. You know as well as I do that I was in great pain.

"THE COURT: Yes, I know.

"MR. CARVER: I wasn't thinking very clearly.

"THE COURT: I know that's true. You were in extreme pain during deliberations.

"MR. CARVER: If there was any question to be decided, I was in no condition to make a decision, because I was in no condition to look it up."

If we were not limited by that decision and were free to approach the problem as one of first impression, I would prefer to apply the same rule that is applicable in other cases of jury misconduct under Penal Code section 1181, subdivision 3; that rule is that jury misconduct raises a presumption of prejudice which may be rebutted by proof that the misconduct did not in fact work to the defendant's detriment and that he suffered no prejudice by reason thereof. (See dissenting opinion in *People* v. *Britton,* 4 Cal.2d 622, commencing at p. 623 [52 Cal.Rptr. 217, 102 A.L.R. 1065]; and also see *In re Winchester* (1960) 53 Cal.2d 528, 534-535 [2 Cal.Rptr. 296, 348 P.2d 904]; *People* v. *Cord* (1910) 157 Cal. 562, 571 [108 P. 511]; *People* v. *Leary* (1895) 105 Cal. 486, 491-494 [39 P. 24].)

I perceive no rational reason why a per se reversal rule should be applied in the factual context of the case at bench which on legal principle is indistinguishable from other situations involving jury misconduct.

Appellant's petition for a hearing by the Supreme Court was denied February 21, 1974.