Filed 9/14/20  P. v. Nguyen CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075246 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN378815) |
| JESSICA NGUYEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

The People charged Jessica Nguyen with stalking (Pen. Code, § 646.9, subd. (a))[1] (count 1), corporal injury to a spouse or roommate (§ 273.5, subd. (a)) (count 2), and willful cruelty to an elder (§ 368, subd. (c)) (count 3).  After the trial court granted Nguyen's motion for acquittal as to the stalking count (count 1), a jury found Nguyen guilty on the remaining counts.  At sentencing, the trial court suspended imposition of sentence and placed Nguyen on probation for three years.

On appeal, Nguyen claims that the trial court erred in admitting evidence related to two police officers' attempt to serve her with an emergency protective order.  Nguyen also maintains that the trial court erred in admitting the testimony of two witnesses that the People offered to rebut the defense's character witnesses.

We affirm the judgment.

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

2

## II.

## FACTUAL BACKGROUND

The victim, J.S., is a 74-year-old retired Marine. In 2000, he met Nguyen. Their relationship evolved into a dating one, and they began living together.

In approximately 2016, the couple moved to Oceanside. Over time, the nature of their relationship changed. The victim developed early onset dementia and Nguyen became his paid caretaker.

Nguyen began to verbally and physically abuse the victim. She would become angry and call him names and slap him in the face. Nguyen would occasionally throw objects at the victim. During one incident, Nguyen placed a large knife to the victim's side and said, "This is the next thing you get." The abuse continued over a period of about six months.

On the morning of Columbus Day 2017, Nguyen hit the victim approximately 20 to 30 times with a stick and a ruler, mostly on his head. The victim begged Nguyen to stop and told her that he was bleeding. Nguyen also threw a cup of hot coffee at the victim, hitting him in his back. The victim left his house and went to a nearby church, where he reported the abuse to several people. One of the people at the church called the police.

Photos taken on the day that the victim reported the abuse show scratches and marks on the victim's face and neck as well as scratches and bruises on his arms, and a coffee stain on his back.

## III.

## DISCUSSION

A. *The trial court did not abuse its discretion in admitting evidence related to two police officers' attempt to serve Nguyen with an emergency protective order*

Nguyen claims that the trial court erred in admitting evidence related to two police officers' attempt to serve her with an emergency protective order. Nguyen maintains that the court's ruling to admit this evidence was error because the ruling improperly permitted the People to present evidence of Nguyen's constitutionally protected right to "refuse to talk to police . . . ."

1. *Factual and procedural background*

During the trial, the prosecutor asked Oceanside Police Detective Todd Ringrose on direct examination whether Ringrose had been "tasked with serving an emergency protective order"[2] in this case. After Detective

---

[2]    Detective Ringrose described an emergency protective order as follows:

> "An emergency protective order, also known as an EPO, is a court order similar to a restraining order that is issued by a judge after hearing the facts of the case as presented by the officer that essentially says you cannot contact Party A. Cannot contact Party B. Can't go near Party B's house.

Ringrose responded in the affirmative, defense counsel posed a relevancy objection, which the court sustained. The prosecutor requested a sidebar conference, which the court granted. After the sidebar conference, which was not reported, the court reversed its evidentiary ruling and permitted the testimony.

Detective Ringrose proceeded to testify about police efforts to serve Nguyen with a protective order. Detective Ringrose explained that he and Oceanside Police Sergeant Marilyn Ortega drove to a residence that Nguyen shared with the victim. Once at the residence, the officers could see a vehicle, previously identified as belonging to Nguyen, parked in the driveway. Approximately 10 feet in front of the front door of the residence was a "makeshift baby gate," that was approximately "three to four feet high with a bike lock around it." The gate prevented the officers from reaching the front door. The officers attempted to call Nguyen on the phone, but she did not answer.

Detective Ringrose looked through a window and could see Nguyen "hiding behind [a] wall and . . . a large speaker . . . ." As the officers moved around the house, Nguyen could be seen moving around to different sides of the wall. After "repeated attempts to get [Nguyen] to come to the front door,"

Can't phone them. Can't text them. Can't strike, harass. Essentially stay away from the person."

she eventually came to the threshold of the front door. According to Detective Ringrose, Nguyen's demeanor was "extremely hostile and aggressive," and she was yelling at the officers. When the prosecutor asked Detective Ringrose to explain what he meant by "hostile and aggressive," Ringrose stated:

> "Sure. As we tried to speak, Ms. Nguyen would yell at me and talk over or through me. She would not listen to anything I had to say and continued to yell at me."

Although Detective Ringrose and Sergeant Ortega were not successful in serving Nguyen with the protective order, another officer was able to serve her with the order during a traffic stop that occurred after Ringrose and Ortega left the area.

Outside the presence of the jury, the trial court permitted the prosecutor and defense counsel to augment the record concerning the court's ruling on the admissibility of the evidence pertaining to the attempted service of the restraining order. Defense counsel argued that Nguyen had a right "not to speak to officers," and that the People should not have been permitted "to comment on her refusal at the time to speak with the police."

The prosecutor argued in response, "[Nguyen] absolutely does have a right not to speak to officers and we didn't elicit any testimony about her refusal to speak with them, just that she was hostile when they did try to talk to her and that she was hiding in her house when they arrived there."

6

The prosecutor continued, arguing that evidence of Nguyen's efforts to hide and her hostility toward the police officers were relevant to demonstrate her consciousness of guilt.

After hearing arguments from counsel, the trial court explained the basis for its ruling, on the record, in relevant part as follows:

> "Thank you. And I originally ruled that before I knew the full story that the issue of the protective order was really not relevant, but as far as the testimony that I heard this morning, it appears that [there] was a lock on the outside of the gate or on the gate. And you can argue that or you can fill in the blanks here, either side, as to whether . . . that was there before or when that was put there.
>
> "But the officer testified that he looked in a window and could see your client, [Ms. Defense Counsel], in somewhat questionable behavior as far as whether she was trying to avoid any contact with . . . the officers.
>
> "You know, . . . she doesn't have an obligation to come out, but her behavior could be interpreted as . . . she's trying to avoid the police.
>
> "And you may have a counterargument that's just as valid, but certainly that the [*sic*] circumstantial evidence of — possibility of a consciousness of guilt on her part. So that's the purpose for which it was admitted."

2. *Governing law and standard of review*

Evidence that a defendant tried to hide after the crime is relevant to show consciousness of guilt. (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1030 (*Vu*); see, e.g., *People v. Kelly* (1928) 203 Cal. 128, 138 ["The testimony of the police officers that, when the defendant was found at his home in San

7

Francisco, a week after the murders were committed, he was in hiding and attempted to escape, was properly admitted for the purpose of showing a consciousness of guilt"]; *People v. Osorio* (2008) 165 Cal.App.4th 603, 609, 618, fn. 4 ["[defendant's] action[ ] in hiding his face [when police were surveilling his house several days after killing] . . . demonstrated a consciousness of guilt"].) That is because "a consciousness of guilt may be inferred from an attempt to avoid apprehension." (*People v. Dabb* (1948) 32 Cal.2d 491, 500.)

Evidence of consciousness of guilt is in turn evidence " 'of the fact of guilt itself.' " (*People v. Wong* (1973) 35 Cal.App.3d 812, 831; see *People v. Jones* (2018) 26 Cal.App.5th 420, 441 ["Evidence of a defendant's consciousness of guilt . . . is admissible to prove the crime"].)

"[T]he existence of alternate explanations for the defendant's behavior does not necessarily defeat the court's discretion to admit consciousness-of-guilt evidence. [Citations.]" (*People v. Anderson* (2018) 5 Cal.5th 372, 391–392 (*Anderson*).) Rather, " 'the existence of explanations—other than consciousness of guilt of the crime charged— . . . is relevant to the *weight* of the evidence . . . , but *not* to its admissibility . . . .' " (*Id.* at p. 392.)

"Evidence showing consciousness of guilt . . . is generally admissible within the trial court's discretion. The court's ruling is reviewed for abuse of discretion. [Citations.]" (*Anderson, supra*, 5 Cal.5th at p. 391.)

8

### 3. *Application*

The trial court could have reasonably determined that Detective Ringrose's testimony concerning Nguyen's actions when Detective Ringrose and Sergeant Ortega came to her residence were consistent with an effort to avoid contact with the officers. When considered cumulatively, evidence concerning the locked gate, Nguyen's failure to answer the phone, and, in particular, Nguyen's efforts to avoid being seen by the officers, constitutes evidence from which the jury could find that Nguyen was trying to hide from the police. Further, the trial court reasonably found that such evidence constituted admissible consciousness-of-guilt evidence. (See *Vu, supra,* 143 Cal.App.4th at p. 1030.)

Nguyen's contention that this evidence was inadmissible because it amounted to improper evidence of her assertion of her constitutional right to refuse to talk to the police[3] under the reasoning in *People v. Keener* (1983) 148 Cal.App.3d 73 (*Keener*), is unpersuasive. In *Keener*, the trial court permitted the People to introduce evidence pertaining to a SWAT-team "siege" of the defendant's home in order to prove his consciousness of guilt of the charged offenses. (*Id.* at p. 78 ["Evidence of the siege was offered to show a consciousness of guilt; i.e., if defendant was not guilty he would have

---

[3] (Citing, e.g., *People v. Zamudio* (2008) 43 Cal.4th 327, 346 [discussing the " 'right to refuse' police requests"].)

9

immediately surrendered"].) After stating that the evidence was "questionably relevant" (*ibid.*), the Court of Appeal concluded that the evidence had been improperly admitted because it constituted "comment upon the assertion of a constitutional right" (*ibid.*), namely, the defendant's right to refuse "to consent to a warrantless entry of his residence." (*Id.* at pp. 78–79.)

In this case, it is undisputed that the officers did not attempt to gain entry to the residence. Thus, the specific constitutional right at issue in *Keener* is not at issue in this case.[4] Nguyen suggests that *Keener* applies by way of analogy because the evidence to which she objects constitutes an improper comment on her constitutional right to refuse to speak to the police. We are not persuaded.

To begin with, there is no evidence that the police officers attempted to question Nguyen such that her right not to speak to the police could have even been triggered. Detective Ringrose explained that the officers were there to *serve* Nguyen with a protective order. He did not testify that the officers were there to *question* her about a crime. Nguyen cites no case law demonstrating that she had a right to refuse service of an emergency

---

4     In any event, Detective Ringrose testified that the victim had given the officers permission to enter the residence, and Nguyen makes no argument that such consent was invalid.

protection order. Moreover, there is no evidence that the officers asked Nguyen any questions or that Nguyen refused to answer the officers' questions. While there was some evidence that the *officers* attempted to speak *to* Nguyen,[5] there was no evidence that the officers were attempting to elicit any response *from* her. In addition, Detective Ringrose testified concerning Nguyen's *acts* (i.e., hiding and then yelling), which are distinct from any assertion of her right to refuse to speak to police. This fact also distinguishes this case from *Keener*, since in *Keener*, the entire body of evidence at issue (i.e., a description of police efforts pertaining to a siege of the defendant's residence) amounted to a comment on the defendant's assertion of his constitutional right, namely, his refusal to consent to entry of the residence.

Accordingly, we conclude that the trial court did not abuse its discretion in admitting evidence related to police officers' attempt to serve Nguyen with an emergency protective order.

B. *The trial court did not abuse its discretion in admitting the People's rebuttal evidence*

Nguyen claims that the trial court erred in admitting the People's rebuttal evidence because the evidence was "wholly irrelevant and

---

[5] Specifically, when asked to explain what he meant by stating that Nguyen was "hostile and aggressive," Detective Ringrose replied that when the officers tried to speak to Nguyen, she yelled at them and would not listen.

inadmissible."  Specifically, Nguyen contends that the rebuttal witnesses'

testimony had "virtually no relevance," to Nguyen's "relationship with [the

victim] or with the alleged charges."

### 1.  *Factual and procedural background*

#### a.  *The defense's character evidence*

The defense called as witnesses two friends of Nguyen's and a neighbor

of Nguyen's who testified to Nguyen's peaceful character.  A friend, who knew

both Nguyen and the victim, testified that Nguyen was "a sweetheart."  The

friend stated that he found it "hard to believe," that Nguyen could be violent

toward anyone.  A neighbor who lived near Nguyen and the victim and who

was friendly with Nguyen stated that Nguyen had a "gentle soul" and told

the jury that, based on what she knew of Nguyen, the neighbor did not

believe that Nguyen had hit the victim.   Another neighbor of Nguyen's

testified that he had never seen her lose her temper and that he could not

"imagine her hitting anybody . . . ."

#### b.  *The hearing on the admissibility of the People's rebuttal evidence*

Outside the presence of the jury, the People requested permission to

present the testimony of two additional neighbors who lived near Nguyen and

the victim.  According to the prosecutor, the neighbors would testify that they

saw young workers helping Nguyen and the victim with yard work.  The

12

prosecutor explained that the neighbors saw Nguyen "yelling at the workers very demanding [*sic*]." The prosecutor stated that such evidence was being offered to rebut the testimony of the character witnesses offered by the defense "essentially saying that [Nguyen] never raises her voice," and that she is "as sweet as can be."

The defense objected to the introduction of the evidence, arguing, "the fact that [Nguyen] was demanding while they were doing work in the yard does not raise [*sic*] to the level of appropriate rebuttal character evidence." The defense continued by noting that the defense witnesses had observed Nguyen "over the period of several years," and had seen Nguyen interacting with the victim. The defense argued that, in contrast, the People's proffered rebuttal evidence was merely that Nguyen had been "demanding when [she and the victim] were in the yard together."

The court ruled that the people could present the evidence, reasoning in part, "I believe the . . . defense had a right to put on character evidence and the people have a right to put on evidence [to] try to rebut that testimony."

c. *The People's rebuttal evidence*

A married couple who were neighbors of the victim and Nguyen testified concerning Nguyen's interactions with young people working for Nguyen and the victim in their front yard. The husband of the couple testified that on one occasion, he observed Nguyen being "very demanding"

13

and "mean" toward the workers. The husband explained the Nguyen spoke to the workers with a "very sharp" tone. The wife of the couple stated that when she saw Nguyen interacting with the workers, Nguyen was "very demanding, bossy." The wife added that "a lot of times [Nguyen was] yelling." In addition, the wife stated, "I could hear her from my house [four houses away] yelling out orders to these people that were helping."

2. *Governing law and standard of review*

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code., § 210.)

Evidence Code section 1102 provides:

> "In a criminal action, evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by Section 1101[6] if such evidence is:

> "(a) Offered by the defendant to prove his conduct in conformity with such character or trait of character.

> "(b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

---

6    "[Evidence Code] section 1101 generally excludes evidence of character or a trait of character to prove a person's conduct on a specified occasion. ([Evid. Code,] § 1101, subd. (a).)  [Evidence Code] [s]ection 1102 creates an exception to this rule in criminal cases . . . ." (*People v. Felix* (1999) 70 Cal.App.4th 426, 431.)

A trial court's ruling on the relevance of evidence is reviewed for an abuse of discretion.  (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.)  Similarly, " ' " [t]he admission of rebuttal evidence rests largely within the sound discretion of the trial court and will not be disturbed on appeal in the absence of "palpable abuse." ' " ' "  (*People v. Krebs* (2019) 8 Cal.5th 265, 335.)

3. *Application*

While the neighbors' testimony surely did not have great probative value given their limited interactions with Nguyen, we cannot say that the evidence was wholly irrelevant.  The evidence amounted to proper rebuttal evidence in that the trial court could have reasonably determined that the testimony of the two neighbors was relevant for the purpose for which it was offered, namely, to rebut evidence of Nguyen's character for peacefulness, and that their testimony was responsive to the defense's character evidence.  The trial court could have reasonably determined that it was for the jury to decide how much weight to give the rebuttal testimony.

Accordingly, we conclude that the trial court did not abuse its discretion in admitting the People's rebuttal evidence.

15

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.